Dennis and Wahoneta Jane Kinstle each separately appeal the judgment of the Juvenile Division of the Logan County Court of Common Pleas granting permanent custody of their six children to the Logan County Children's Services Board ("Appellee"). For the following reasons, we affirm the judgment of the trial court.
Dennis and Wahoneta Jane ("Jane") were married June 1, 1985 and divorced March 1, 1994. The following children are the natural children of Dennis and Jane: Thomas Kinstle (born May 10, 1985); Anthony Kinstle (born July 16, 1986); Nicholas Kinstle (born October 14, 1988); Andrew Kinstle (born January 6, 1990); Jessica Kinstle (born December 20, 1990); and Joshua Matthew Kinstle (born April 2, 1992). At the time of the divorce, custody was vested in Dennis.[1]
On March 11, 1993, Andrew was legally placed in foster care for three days upon the arrest of Dennis on charges of Fraudulent Use of Telephone Services. Jane wasn't living in the family home and told the caseworker that she could not care for the children because she only had a small apartment. Dennis was released and there was no actual placement of the children.
A complaint was filed on May 30, 1994 alleging Joshua Matthew to be an abused child based upon allegations that he was physically abused at the hands of a childcare provider who lived in the family home. The filthy condition of the home was a secondary cause. The complaint also alleged Thomas, Anthony, Andrew, Nicholas, and Jessica to be neglected and dependent children. A shelter care hearing was conducted on June 1, 1994, with an order of temporary custody to the Appellee. An adjudicatory hearing was held on June 30, 1994. At the hearing, Joshua was found to be an abused child and Thomas, Anthony, Andrew, Nicholas, and Jessica were found to be neglected and dependent children. A dispositional hearing was conducted on June 30, 1994. With the approval of the Appellee, who retained temporary custody, the children returned to the custody of Dennis in July 1994.
Thomas was again removed from the family home to the temporary custody of the Appellee on August 19, 1996 over concerns that Jane would remove him from the jurisdiction of the trial court. All of the remaining children were placed into the temporary custody of the Appellee on September 26, 1996. This occurred when each parent was found to be without a home for the children as both parents were evicted from their Metropolitan Authority Housing Unit for nonpayment of rent. The children have remained in foster care placement and in the temporary custody of the Appellee continuously from the fall of 1996. In May 1997, the Appellee filed a motion for permanent custody.
On August 14, 1997, Dennis filed a motion to terminate temporary custody of his children and requested they be returned to his care. The trial court conducted in camera
interviews with each of the six children on September 10, 1997, as part of the hearing on Dennis's motion. The motion was ultimately denied. Dennis appealed the denial of his motion and this Court dismissed the appeal as not constituting an appeal from a final, appealable order. See In re Kinstle (Mar. 6, 1998), Logan App. Nos. 8-97-27, 8-97-28, 8-97-29, 8-97-30, 8-97-31, and 8-97-32, unreported.
The trial court conducted a hearing on the motion for permanent custody by the Appellee on April 28, 29, and 30, 1998. The trial court awarded permanent custody of the six children to the Appellee on July 9, 1998. It is from this judgment that Jane now asserts three assignments of error and Dennis now asserts one assignment of error.
 JANE KINSTLE'S ASSIGNMENT OF ERROR NO. I
 The Juvenile Court erred by reaching conclusions and not by making independent determinations of the relevant statutory criteria and evidence for each child.
Under this assignment of error, Jane contends that the trial court failed to make independent determinations of the relevant statutory criteria for each of her six children.
We agree with Jane that "the law requires the trial court to make an independent determination of the relevant criteria in R.C. 2151.414(B) and all other relevant evidence independently for each child in a multichild [sic] permanent custody proceeding." In re Hiatt (1993), 86 Ohio App.3d 716, 725. See, also, In re William S. (1996), 75 Ohio St.3d 95. We also find that how a parent treats one child can be relevant to the welfare of another child. In re Hiatt, supra.
In any event, we do not find merit in Jane's argument that the trial court failed to make independent determinations as we find that the trial court did consider each child in its twenty page opinion. In this case, the trial court based its decision in part on the evidence that each parent was unwilling to either provide shelter for the children or prevent each child from suffering physical, emotional, or sexual abuse or neglect. R.C. 2151.414(E). These conditions affect each child.
Moreover, in its opinion, the trial court considered each child separately. For instance, a foster parent of each child testified at the permanent custody hearing and the trial court specifically discussed the testimony of the foster parents in its opinion under its findings of facts. In addition, the trial court considered the September 10, 1997 in camera interviews of all of the children at the request of each party.[2] Also, before the court were State's Exhibits 30-35 which provided summaries of the custodial history of each child. Specifically, the trial court found that all six of the children "require individual attention to function well at home and school but that three of them, Tony, Tom, and Andy require and [sic] inordinate amount of individual attention and effort by the foster parents to maintain focus and discipline in school work and home chores." The court also considered the initial and supplemental reports of the guardian ad litem before finding that the best interests of the children would be served if the trial court granted the motion for permanent custody.
From the above-mentioned evidence and after a review of the record, we cannot find that the trial court did not consider each child individually in determining that it would be in the best interests of the six children to be awarded to the Appellee's permanent custody. As such, Jane's first assignment of error is overruled.
 JANE KINSTLE'S ASSIGNMENT OF ERROR NO. II
 The Juvenile Court erred by ruling that by clear and convincing evidence that it is in the best interest of the Kinstle children that permanent custody be granted to the Logan County Children's Services agency.
Under this assignment or error, Jane asserts that the trial court lacked the clear and convincing evidence necessary to grant permanent custody to the Appellee.
A court may terminate parental rights and grant permanent custody to an agency if it finds by clear and convincing evidence that it is in the best interests of the child and the child cannot be placed with either of the parents within a reasonable time or should not be placed with either of the parents. R.C. 2151.414(B). The R.C. 2151.414 permanent custody determination must be supported by clear and convincing evidence. R.C. 2151.414(B) and (E); In re Hiatt, supra.
 "Clear and convincing evidence" is defined as that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will provide in the mind of the trier of fact a firm belief or conviction as to the facts to be established.
In re Hiatt, 86 Ohio App.3d at 725, citing Cincinnati BarAssoc. v. Massengale (1991), 58 Ohio St.3d 121, 122.
In the case before us, we find that clear and convincing evidence did exist to grant permanent custody of the children to the Appellee. See R.C. 2151.414(B)(1), (D), and (E). Specifically, we find that the trial court determined the following provisions of R.C. 2151.414(E) applicable to the present case:
 If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect;
 (10) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety;
* * *
 (12) Any other factor the court considers relevant.
(Emphasis added.)
In the present case, neither party was determined to have the willingness to provide an adequate home for the children. Jane testified that she did not have housing for the children.[3] This supports the finding that the children cannot be placed with Jane pursuant to R.C. 2151.414(E)(1), (4), (9), and (12). Dennis did have housing as he had secured a three bedroom rented home. However, there was testimony by William Appel[4], Logan County Children's Services Home Manager, that Dennis would most likely not be able to maintain the house while supporting the six children based on his current income and his expected aid. The trial court also heard testimony that Dennis and Jane were unable to maintain a low rent housing unit when they had more income and less expense. This supports the trial court's finding that Dennis has demonstrated an unwillingness to provide an adequate permanent home, that he failed to remedy the conditions which caused the children to be placed outside the home, and that he for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the children. R.C. 2151.414(E)(1), (4), and (9).
The trial court also determined that Dennis's lack of resolve concerning Jane created a problem of stability in the family home. For instance, according to Exhibit 36, Jane moved out of the family home in August 1996, returned to the family home in November 1996 after having lived at several other residences, moved out On March 21, 1997 and returned on March 23, 1997, moved out on April 24, 1997, and returned and was living with Dennis on December 23, 1997. When Dennis procured his present residence, he offered Jane a key to the house and placed her name on the lease. Moreover, he repeatedly suggested that it was her decision whether their relationship would continue. When asked how many times Jane left the family home and returned only to leave again, Dennis stated "too many to count." In addition, the trial court determined that the relationship between Dennis and Jane and his failure to resolve the relationship would continue to cause instability in the children's lives and in the family home. Thus, the trial court determined that Dennis was unwilling to provide an adequate home for the children and remedy the situation which caused the removal of the children. See R.C. 2152.414(E)(1), (4), (9), and (12). We find that the record supports this determination.
Accordingly, we find that clear and convincing evidence exists to support the award of permanent custody of the children to the Appellee.
Jane's second assignment of error is overruled.
 JANE KINSTLE'S ASSIGNMENT OF ERROR NO. III
 The granting of permanent custody is against the manifest weight of the evidence.
Jane lists this assignment of error in her statement of the assignments of error presented for review, but she fails to make an argument in her brief for this assignment of error. In her conclusion, Jane states that the decision of the trial court was against the manifest weight of the evidence.
App. R. 16(A)(3) and (7) require Jane to set forth in her appellate brief a statement of the assignments of error presented for review with arguments containing the contentions with citations to the authorities, statutes and parts of the record relied on to support them. See, also, Loc.R. 11. Although Jane failed to follow this rule, in the interests of justice, we will consider whether the decision of the trial court was against the manifest weight of the evidence.
"[T]he decision of a trier of fact relating to a motion for permanent custody) of children will not be overturned as against the manifest weight of the evidence, so long as the record contains competent [,] credible evidence from which the trial court could have formed a firm belief or conviction that the essential statutory elements have been established." In reLawson/Reid Children (Apr. 18, 1997), Clark App. No. 96-CA-0010, unreported, citing C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus.
As discussed in the above assignment of error, the record does contain competent, credible evidence by which the trial court, as trier of fact, could have found that the elements of R.C. 2151.414 were met. Therefore, we will not overturn the judgment as against the manifest weight of the evidence. Accordingly, Jane's third assignment of error is overruled.
 DENNIS KINSTLE'S ASSIGNMENT OF ERROR NO. I
 No court should grant a movant permanent custody under Ohio Revised Code 2151.414 et seq. unless clear and convincing evidence is presented on each factor essential to the granting of relief under that section.
Under this assignment of error, Dennis contends that the order granting permanent custody of the children to the Appellee constitutes clear error. For the following reasons, we disagree.
First, Dennis asserts that the trial court did not consider R.C. 2151.414(D)(1) as it was considering the statutory requirements of R.C. 2151.414. Dennis states R.C. 2151.414(D) as the following: "[t]he reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption." As the Appellee demonstrates, this section of the statute has been repealed effective September 18, 1996. Thus, the trial court was not required to consider the former version of R.C. 2151.414(D)(1).
The current version of R.C. 2151.414(D) which refers to "legally secure placement" provides as follows: "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of custody to the agency." In its judgment, the trial stated the following:
 Based upon the testimony of Rachel Gillespie of the Logan County Children's Services, a supervisor of adoption services for the agency, the Court FINDS that a grant of permanent custody is necessary before Children's Services may initiate adoption planning services for any child in their care and custody.
Rachel Gillespie is the Program Director of the Logan County Children's Services. In Ms. Gillespie's testimony she stated that "[i]n order to place a child for adoption, we need to have permanent custody." Accordingly, the trial court did consider R.C. 2151.414(D)(4) its judgment entry and clear and convincing evidence supports the trial court's conclusion.
Second, Dennis contends that the trial court erred in finding that he did not have a willingness to provide a permanent home for his six children. R.C. 2151.414(E)(4) and (9). As stated, we find clear and convincing evidence in the record to support the trial court's finding. Specifically, Mr. Appel's testimony states that "in dealing with his family for five years, I've never known them to be able to have any money extra. As a matter of fact, there's been months, many times when they run out of money and resources before the end of the month * * *." Mr. Appel also testified that the family was unable to meet the family's expenses when they had more income and less expenditure for rent. From Mr. Appel's testimony and from the testimony of Dennis, it is evident that his income with assistance programs that would only last two years would not meet the needs of his children. Moreover, the trial court found that Dennis cannot maintain a suitable home because of his history of being taken advantage of financially by Jane and by allowing her to come and go as she pleases out of the family home. Thus, we find clear and convincing evidence to support the finding that Dennis has demonstrated an unwillingness to provide an adequate permanent home.
Third, Dennis argues that the trial court erred in finding that he failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home. R.C. 2151.414(E)(1). Some of the reasons that the trial court found surrounding the removal of the children from the home were that: (1) Joshua Mathew had been physically abused by an in-home caregiver while in the custody of Dennis; (2) the home was unclean with safety concerns for the small children; (3) the family was evicted from the Metropolitan Housing unit for nonpayment of rent; (4) the parents were unable to find adequate housing because of lack of employment; (5) the inability to sustain housing was aggravated by relationship problems and instability between the parents, with Jane moving in and out of the family home and Dennis unable to deal effectively with Jane's frequent moves; (6) the first removal of the children in 1993 was directly related to Dennis being arrested for illegally tapping phones to call physic counselors because he was despondent because his wife left him; (7) the parental choice of using an abusive babysitter who sexually molested three of the children; and (8) the poor choice of a childcare provider by Dennis and the lack of supervision of that childcare provider by Dennis.
Dennis specifically argues that he can now provide a stable home and has stable employment. While we agree, and the trial court conceded, that Dennis has gained steady employment, we do find that clear and convincing evidence exists to support the trial court's finding that Dennis is unwilling to provide housing for his six children.
In addition, we find that the record supports the finding of the trial court that all of the conditions that led to the removal of the children have not been remedied. For instance, when asked about an appropriate caregiver if Dennis, who worked a full-time job, were to receive the children, Dennis stated Jane would help on occasion and that a neighbor who already cared for several children indicated she would care for his children as well. He stated that he did not know her last name nor the amount of payment for these services. Thus, we find clear and convincing evidence that Dennis has not remedied the situation of providing a safe caregiver for the children. Moreover, Dennis tested positive for canabinoids in his urine several times despite trying to regain custody of his children. Thus, we cannot find error in the trial court's determination that Dennis has failed to remedy the conditions causing the children to be placed outside the home. See R.C.2151.414(E)(1).
Fourth, Dennis argues that the trial court did not consider the suggestion by the guardian ad litem to supply Dennis with a housekeeper to insure the household ran smoothly. We find that the trial court properly considered the statutory guidelines in awarding permanent custody to the Appellee and, thus, find no merit in this argument.
Accordingly, this assignment of error is overruled and the judgments of the trial court are affirmed.
Judgments affirmed.
 BRYANT, P.J., and SHAW, J., concur.
[1] On May 8, 1996, the custody of the children was altered from sole custody by Dennis to joint custody by Dennis and Jane. This was effected to allow Jane to assume the Metropolitan Housing Authority lease from Dennis without losing the family residence.
[2] The in camera interviews were incorporated by reference into the permanent custody hearing.
[3] In Jane's brief, she basically concedes that she would not be a good parent because of her lack of stability and her lack of providing adequate shelter for the children.
[4] Mr. Appel has worked with Dennis for several years. In the last two to three years, Mr. Appel saw Dennis once a week.