OPINION
Appellant Annie Hough appeals the decision of the Stark County Court of Common Pleas, Family Court Division, which granted permanent custody of two of her children to the Stark County Department of Human Services ("SCDHS"). The pertinent history of the case is as follows: On February 15, 1996, the Stark County Family Court found appellant's children, Alisha McMillen, born October 23, 1991, and Angel Hough, born September 5, 1994, to be neglected. The court granted SCDHS temporary custody at that time. On August 19, 1997, SCDHS filed for permanent custody. The court heard evidence on the permanent custody motion on March 12, 1998, May 20, 1998, and June 18, 1998. Christopher McMillen, the signer of Alisha's birth certificate, was a party to the proceedings. The alleged father of Angel, Clinton McCauley, did not participate. On December 18, 1998, the trial court filed its findings of fact and conclusions of law, and issued a judgment entry granting permanent custody of Alisha and Angel to SCDHS. Appellant timely appealed and herein raises the following two Assignments of Error:
 I THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 II THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
Appellant's first and second assignments of error both concern whether the trial court's decision is supported by the manifest weight and sufficiency of the evidence.
In her first assignment of error, appellant contends the trial court's conclusion that the minor children could not be placed with her within a reasonable amount of time is against manifest weight and sufficiency of the evidence. Appellant maintains, in her second assignment of error, the trial court's conclusion that the best interest of the children would be served by the granting of permanent custody to SCDHS is also not supported by the manifest weight and sufficiency of the evidence. We disagree with both assignments of error. As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279,281. It is based upon this standard that we review appellants' two assignments of error.
I The relevant statute, as written at the time of the permanent custody action in the case sub judice, is R.C. 2151.414. It provided in part: * * * (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
(1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
(2) The child is abandoned and the parents cannot be located;
(3) The child is orphaned and there are no relatives of the child who are able to take permanent custody.
* * *
In her first assignment of error, appellant challenges the trial court's conclusion, under R.C. 2151.414(B)(1), that the children are not abandoned or orphaned and cannot be placed with either of their parents within a reasonable time or should not be placed with either of their parents. The directives of R.C. 2151.414
(B)(1) are clarified by R.C. 2151.414(E), which reads in part as follows: (E) In determining at a hearing held pursuant to division (A) of this section * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
(1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. * * *
* * * (12) Any other factor the court considers relevant.
We find the evidence introduced at the hearing supports the trial court's conclusions under R.C. 2151.414(B) and R.C. 2151.414(E). The case plan filed with the trial court ultimately contained five main components: a requirement for appellant to obtain stable and appropriate housing, attendance at Goodwill parenting classes, completion of a psychological evaluation, individual and joint counseling, and participation in visiting with the two children. We initially note that SCDHS was not necessarily required to prove at trial that appellant completely failed in achieving the goals of the case plan. This court has upheld permanent custody findings despite evidence in the record that a parent made partial progress on his or her case plan. In re Bunting Children (Oct. 13, 1998), Stark App. No. 97CA0381, unreported. The first component of the case plan was the subject of several sections of testimony in the transcript. During cross-examination, appellant indicated she had moved numerous times since November, 1995, the last date on which either of the children had lived with her. She originally moved from Fourth Street in Canton to an apartment on Alan Page Drive, where she lived for approximately one year. She then began living with an aunt on Ninth Street for one or two months. From there, she relocated to the YWCA for approximately two to three weeks, then began staying with a boyfriend, James Soles, on Shorb Avenue. This lasted for about four months. She then obtained a room at the Towne Manor Hotel in Canton for thirty days. At that point, she moved out of Stark County to address on Newman Street in Mansfield, Ohio, where she stayed for about six months. T. at 61-63. According to her testimony, her address as of March 1998, was on Seventh Street N.W. in Canton. T. at 60. However, as of the third evidentiary hearing in June 1998, appellant was again living at a different address with her aunt and three other persons. T. at 208-209. According to rebuttal testimony obtained from caseworker Norma Thorpe, this aunt had been the subject of previous SCDHS involvement. T. at 223. SCDHS also presented evidence regarding the second component. Appellant enrolled in two series of classes: one from June to August, 1996, and another from April to May, 1997. T. at 37. In addressing the latter classes, Goodwill supervisor Colleen Miller testified as follows:
Q. On her second occasion, how did she interact with her children?
 A. I believe with the second involvement in the parenting program, the visitations were not real positive.
Q. Can you elaborate on that, please.
 A. Uh huh, yes, Annie was observed walking up and down the halls at the beginning of the visit possibly in search of someone who's coming to the visits. She often looked for other staff members or other visitors to help her in the cafeteria with the children. She also allowed visitors to come into the program against the wishes of the case worker, or without permission, from her case worker. T. at 38-39.
Regarding the third objective of the case plan, psychologist Gerald Bello, SCDHS's expert witness, testified to the results of his 1996 evaluation of appellant. He indicated that appellant's personality test results demonstrated a "sawtooth" pattern, which "identif[ied] random responding and defensiveness in presentation." T. at 18-19. When questioned regarding his conclusions of appellant's competency to parent, he stated as follows: A Yeah, I think I can state a fair amount of certainty, I think if you look at the intake and you combined history in terms of previous relationships and involvements and stuff like that, concerns that are raised whether she accepted responsibility for them, or not, and then intelligence level and some of the defensiveness on the profile, my sense was that she would have a very difficult time parenting effectively, because of a couple factors.
T. at 20.
Dr. Bello's assessment of appellant's I.Q. was a score of 77, which he considered in the borderline range. T. at 25. Turning to the remainder of the case plan, the transcript reveals that although appellant fared better in the joint counseling process, appellant did not complete her recommended individual counseling. T. at 82. Appellant attributed this to her inability to pay. T. at 194. Additionally, caseworker Thorpe scheduled forty visits for appellant and her children in 1996 and 1997 (exclusive of those arranged through Goodwill). Of these, appellant failed to show, canceled, or was late for seventeen visits. T. at 78. Although appellant attributed these problems to transportation difficulties and miscommunication, it is well established that the trier of fact is in the best position to weigh evidence and evaluate testimony. See, In re Brown (1994), 98 Ohio App.3d 337, 342; In re Hiatt (1993), 86 Ohio App.3d 716, 726. We therefore find that the record presents sufficient competent, credible evidence supporting the holding that, despite the Agency's reasonable case planning and diligent efforts, appellant had refused or failed to remedy the concerns that initially caused the children to be placed outside her home. Appellant's First Assignment of Error is overruled.
 II
Appellant also challenges the trial court's finding that the grant of permanent custody served the best interests of Alisha and Angel. The relevant statutory section of R.C. 2151.414, as written at the time of the case sub judice, mandates as follows: (D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
A review of the record indicates that although both children demonstrated some attachment to appellant, they likewise showed an attachment and positive interaction with other relatives and third parties. T. at 234-35. Caseworker Thorpe testified that both children were adoptable and in a placement with foster parents who had expressed a desire to adopt. T. at 235-36. Thorpe further expressed doubt that appellant would ever be able to provide the stability warranted for the children. T. at 238. As discussed supra, appellant demonstrated ongoing difficulty in obtaining stable housing throughout the duration of the case, a factor which is clearly relevant in a "best interests" analysis. Finally, it is uncontroverted that the recommendation of the guardian ad litem urged that the trial court grant permanent custody to SCDHS. Judgment Entry at 23. "The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Awkal (1994), 95 Ohio App.3d 309, 316. We therefore conclude that the trial court's determination regarding the children's best interests was supported by competent, credible testimony, and find that the judgment was not against the manifest weight and sufficiency of the evidence. Appellants Second Assignment of Error is overruled.
For the reasons stated in the foregoing, the decision of the Court of Common Pleas, Family Court Division, Stark County, Ohio, is affirmed.
By Farmer, J. Gwin, P.J. and Reader, V. J. concur.