JOURNAL ENTRY AND OPINION.
Appellant Tamiko Harris appeals from an order of the juvenile court terminating her parental rights and awarding permanent custody of her daughter Catherine Harris to the Cuyahoga County Department of Children and Family Services (CCDCFS).
The child was born on October 16, 1995, and came to the attention of CCDCFS within months. CCDCFS was concerned with lack of adequate housing and medical care for the child. In February 1996, CCDCFS developed a safety plan to prevent removal of the child from appellant's custody. When appellant failed to comply with the safety plan, the child was taken into CCDCFS custody and placed with a foster family. CCDCFS developed a reunification plan which required appellant to obtain stable housing, to complete parenting education, and to have a mental health assessment.
A series of complaints were filed in this case. Appellant originally identified the father of the child as Alfonzo Johnson, and initial proceedings named him as the father. More than two years later, in April 1998, appellant informed CCDFCS that James Alonzo Tate was the father of the child. CCDCFS ultimately filed and served a neglect and dependency complaint seeking permanent custody. Tate was incarcerated and took little interest in the proceedings. His mother, the child's paternal grandmother, Stephanie Thompson, took more interest.
The matter proceeded to a temporary custody hearing following the filing of the third complaint by CCDCFS. CCDCFS social worker Kristie Groves testified that she worked on the Harris case since the beginning when the neglect and dependency of the child came to the agency's attention in January 1996. She testified that appellant had not completed her case plan. She also stated that, during the course of the proceedings, CCDCFS investigated relatives of both alleged fathers, but found none of them to be suitable.
Groves specifically testified that she investigated Stephanie Thompson, the child's paternal grandmother. She was aware of Thompson's prior criminal background. Thompson admitted that she knew before the paternity test that her son was possibly the father of the child, but denied telling a social worker that she thought the child might have been her son's. Groves believed that Thompson could have contacted CCDCFS to express her interest earlier. Following the conclusion of the hearing, the juvenile court awarded temporary custody of the child to CCDCFS.
The matter thereafter proceeded to a consolidated adjudicatory and dispositional hearing by agreement of the parties. CCDCFS presented testimony during the two-day hearing from four witnesses; social workers Groves and Jeanette McLean, psychiatrist Nancy Huntsman, and Berea Children's Home employee Julius Toth. The mother and a CCDCFS driver testified during the mother's case. Finally, the father and Thompson, his mother and the child's grandmother, also testified.
Following the hearing, the juvenile court awarded permanent custody to CCDCFS, stating, in part, as follows:
 The Court heard evidence and testimony. The Court finds that the allegations of the complaint have been proven by clear and convincing evidence. The child is found to be dependent and neglected.
 Upon further consideration, the Court finds by clear and convincing evidence that it is in the best interest of the child to grant Permanent Custody to the Cuyahoga County Department of Children and Family Services and the child is not abandoned or orphaned.
 The Court further finds that the child cannot be placed with the parents within a reasonable time or should not be placed with the parents for the following reasons:
 Following the placement of the child outside of the home, the parents have failed continuously and repeatedly for a period of six (6) months or more to substantially remedy the conditions causing the child to be placed outside the home.
 The parent [sic] is unable to provide an adequate permanent home for the child in the foreseeable future due to the parent's severe and chronic mental illness * * *.
 The parent [sic] has failed or refused to provide basic necessities, regular support, visit or communicate with the child when able to do so or by other actions, has shown an unwillingness to provide an adequate permanent home for the child.
Appellant mother timely appeals raising the following three related assignments of error:
 THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION BY REFUSING TO PLACE THE MINOR CHILD CATHERINE HARRIS IN THE TEMPORARY CUSTODY OF THE PATERNAL GRANDMOTHER STEPHANIE THOMPSON AT THE EMERGENCY CUSTODY HEARING HELD ON AUGUST 14, 1998 AND BY GRANTING PERMANENT CUSTODY OF THE CHILD TO CCDCFS ON MAY 24, 1999.
 THE DISPOSITIONAL ORDER OF THE TRIAL COURT GRANTING PERMANENT CUSTODY OF CATHERINE HARRIS TO THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES WAS BASED UPON INSUFFICIENT EVIDENCE AS TO THE BEST INTERESTS OF THE CHILD.
 THE BEST INTEREST STANDARD AS APPLIED BY THE TRIAL COURT WAS IMPROPERLY REGARDED [SIC] AND IMPROPERLY FOLLOWED WHEN MAKING ITS DECISION TO DENY PATERNAL GRANDMOTHER STEPHANIE THOMPSON AN OPPORTUNITY TO OBTAIN LEGAL CUSTODY OF CATHERINE HARRIS, THEREBY CONSTITUTING AN ABUSE OF DISCRETION.
These assignments lack merit.
Appellant mother argues generally that the juvenile court did not adequately consider whether the child could be placed with Thompson, the child's paternal grandmother, rather than with the CCDCFS foster family of more than two years. She seeks to challenge both the temporary custody order and the final permanent custody order that superseded it. She specifically contends that the juvenile court did not properly determine or weigh the best interest of the child and improperly relied upon the fact that Thompson, the grandmother, did not appear until more than two years elapsed in the action.
We note initially that any challenge to the temporary custody order, entered at the outset of the case, became moot upon the entry of the final permanent custody judgment that superseded it. Under the circumstances, even if appellant's arguments concerning the temporary order were correct, this court could grant no effective relief from the original temporary custody order.
In any event, regardless of the timing of the juvenile court's determination concerning either the child's best interests or the potential placement of the child with Thompson, appellant has failed to show any substantive error. The information presented at both the temporary custody hearing and the dispositional hearing was essentially the same, although the evidence presented at the latter dispositional hearing was more extensive.
Appellant mother has not disputed that she failed to satisfy the terms of her case plan. She did not obtain stable housing or adequately address her mental health needs. Although she attended parenting education classes, her parenting skill did not improve sufficiently. Despite the lapse of three years, no substantial progress had been made from the time the child was originally taken from her custody, through the temporary custody order, or the final permanent custody hearing.
Both appellant mother and the child's father argued that Thompson, the paternal grandmother, rather than CCDCFS, should have been awarded legal custody. As noted above, CCDCFS investigated Thompson's suitability prior to the temporary custody hearing, but concluded that the best interest of the child would be served by placing her with the existing foster family of more than two years.
R.C. 2151.414(D) provides a non-exclusive list of factors to consider when determining the child's best interest. In addition to other relevant factors, R.C. 2151.414(D) directs the court to consider the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Appellant mother has failed to show that the juvenile court ignored any applicable factor or considered any improper factor. The child was in CCDCFS custody during the course of the proceedings for approximately two and one-half years and in appellant's custody for only the first four months of her life. The child has developed strong bonds with the foster family with whom she has had a stable relationship for several years and needs a more permanent arrangement. Under the circumstances, appellant has not shown any error or abuse of discretion in the trial court's findings concerning the best interests of the child.
Appellant contends that R.C. 2151.412(G)(2) dictates a contrary result. R.C. 2151.412(G) provides guidance for case plans and provides that under certain circumstances an agency should give priority to placing the child within its extended family.[1] R.C. 2151.412 applies by its own terms to the development and review of case plans, rather than to permanent custody determinations.
Even if this statute applied by its own terms, however, it is well established that the statute does not grant any substantive rights to any extended family member concerning the potential placement of a child. In the Matter of Leverett (Mar. 26, 1998), Cuyahoga App. Nos. 71357, 71358, 71359, and 71360, unreported at pp. 13-16 (citing In re Hiatt (1993),86 Ohio App.3d 716, 721.)
Finally, contrary to appellant's argument, the record in the case at bar reveals that CCDCFS considered placement of the child with Thompson, the paternal grandmother, as suggested by R.C. 2151.412(G)(2), but concluded that doing so was not in the child's best interest. Under such circumstances, R.C. 2151.412(G)(5) indicates the child should be committed to the permanent custody of the public children services agency as in the case at bar.
Accordingly, appellant's three assignments of error are overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of the Common Pleas Court to carry this judgment into execution.
MICHAEL J. CORRIGAN, J., and ANNE L. KILBANE, J., CONCUR.
 _________________________________ DIANE KARPINSKI, PRESIDING JUDGE
[1] The text of R.C. 2151.412(G) is set forth in the Appendix in its entirety.
Appendix
R.C. 2151.412(G) provides as follows:
 In the agency's development of a case plan and the court's review of the case plan, the agency and the court shall be guided by the following general priorities:
 (1) A child who is residing with or can be placed with the child's parents within a reasonable time should remain in their legal custody even if an order of protective supervision is required for a reasonable period of time;
 (2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family;
 (3) If a child described in division (G)(2) of this section has no suitable member of the child's extended family to accept legal custody, the child should be placed in the legal custody of a suitable nonrelative who shall be made a party to the proceedings after being given legal custody of the child;
 (4) If the child has no suitable member of the child's family to accept legal custody of the child and no suitable nonrelative is available to accept legal custody of the child and, if the child temporarily cannot or should not be placed with the child's parents, guardian, or custodian, the child should be placed in the temporary custody of a public children services agency or a private child placing agency;
 (5) If the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with either, if no suitable member of the child's extended family or suitable nonrelative is available to accept legal custody of the child, and if the agency has a reasonable expectation of placing the child for adoption, the child should be committed to the permanent custody of the public children services agency or private child placing agency;
 (6) If the child is placed for adoption or foster care, the placement shall not be delayed or denied solely on the basis of the child's or adoptive or foster family's race, color, or national origin.