OPINION
Appellants Tamara Rollinson and Cynthia Rollinson appeal the Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, which granted appellee the Stark County Department of Human Services permanent custody of Tamara's minor children, Devonte Ray and Jequan Rollinson.[1]
 STATEMENT OF THE FACTS AND CASE
Appellant Tamara Rollinson (hereinafter "mother"), a minor child, is the natural mother of Devonte Ray (DOB 9/9/94) and Jequan Rollinson (DOB 3/12/96). Appellant Cynthia Rollinson (hereinafter "grandmother") is the maternal grandmother of Devonte and Jequan.
The Stark County Department of Human Services (hereinafter "SCDHS") initially became involved with Devonte after his birth. At that time, mother was thirteen (13) years old and residing in the legal custody of her sister pursuant to court order in Stark County Juvenile Case No. JU86696. SCDHS had protective supervision of mother. Mother's sister informed SCDHS that, as a result of mother's unruly behavior, she could no longer care for mother and Devonte. Thereafter, on October 27, 1994, mother ran away from her sister's home with Devonte. Consequently, on that same day, SCDHS filed a complaint for temporary custody of Devonte alleging that the child was a dependent child as defined under R.C. 2151.04.
The trial court conducted an emergency shelter care hearing on October 28, 1994. At that time, mother and Devonte were still missing. Although grandmother did not appear, her attorney from a prior case appeared on her behalf. The trial court awarded temporary custody of Devonte to SCDHS.
On the evening of November 8, 1994, mother and Devonte were found at a house on 6th Street in Canton, Ohio. The house was in deplorable condition and filled with strangers. Devonte was sick and very congested. The police escorted mother and the child away and filed child endangering charges against mother.
The following day, on November 9, 1994, the trial court held an adjudicatory hearing, at which time adjudication was continued for trial until January 11, 1995. Thereafter, on November 16, 1994, SCDHS filed an amended complaint.
At the request of mother's guardian ad litem, the trial court conducted a review hearing on November 16, 1994. At that time, SCDHS had two possible placements, both of which would take mother and Devonte together. Pending finalization of the placement, the trial court ordered weekly visitation between mother and Devonte.
On December 12, 1994, grandmother filed a motion for review requesting visitation with Devonte and requesting mother and Devonte again be placed with mother's sister. At a hearing held on December 21, 1994, the trial court learned, over Thanksgiving weekend, mother had run away from her foster home and her whereabouts were unknown. SCDHS advised the trial court that grandmother had tested positive for cocaine. Accordingly, the trial court ordered only supervised visits between grandmother and Devonte.
At the adjudicatory hearing on January 11, 1995, grandmother stipulated that Devonte was a dependent child. After hearing evidence, the trial court found Devonte to be a dependent child. At a dispositional hearing on January 20, 1995, the trial court awarded temporary custody of the child to SCDHS and adopted a case plan. Mother had reappeared by this time and was placed at CCRC.
On September 20, 1995, SCDHS filed a motion for permanent custody of Devonte based upon mother's failure to cooperate with the case plan, repeated running away, and truancy as well as grandmother's unresolved cocaine addiction. A hearing was originally set for January 22, 1996, but was continued until April 1, 1996, to give mother additional time to work on the case plan.
After the filing of the motion for permanent custody, mother, who was pregnant, again ran away from her sister's home. Mother reappeared in February, 1996. On March 12, 1996, mother gave birth to her second child, Jequan Rollinson. On March 13, 1996, SCDHS filed a complaint alleging Jequan was a dependent child and requesting temporary custody of the baby.
At the emergency shelter care hearing on March 14, 1996, mother stipulated probable cause existed for the issuance of the emergency shelter care order. The trial court ordered SCDHS to investigate placement with Richard Rollinson, mother's maternal uncle.
At the adjudication in regards to Jequan on April 11, 1996, all parties stipulated Jequan was a dependent child. The trial court placed Jequan with Richard Rollinson. On May 17, 1996, SCDHS filed a motion for immediate review regarding the relative placement of Jequan with Richard Rollinson based upon the Agency's discovery that Rollinson had a felony conviction for aggravated assault, which would disqualify him as an appropriate placement. The trial court ordered Jequan to remain in the home of Richard Rollinson.
On May 28, 1996, the hearing in regards to permanent custody of Devonte was continued until December 9, 1996 in order for SCDHS to investigate relative placement in Kansas and provide mother with an opportunity to continue to work on the case plan.
At the dispositional hearing in regards to Jequan, the trial court continued temporary custody of the child with SCDHS and adopted a case plan. At that time, mother was with Richard Rollinson and Jequan on an extended visit. Several days later, Rollinson informed SCDHS that Jequan needed to be removed from his home. Thereafter, Rollinson placed mother and Jequan on a bus and sent them back to Canton. Against court orders, mother and Jequan spent the night with grandmother. At a hearing on SCDHS's Motion for Immediate Review which was filed on June 14, 1996, the trial court ordered Jequan be placed in foster care.
Thereafter, on September 24, 1996, SCDHS filed a Motion for Permanent Custody of Jequan based upon mother's failure to cooperate with the case plan and continued delinquent/unruly behavior as well as grandmother's unremitting cocaine addiction. The trial court consolidated the permanent custody hearings in regard to both children.
At the hearing for permanent custody on January 22, 1997, grandmother appeared without counsel and requested an attorney for the permanent custody hearing. After appointing counsel for grandmother, the trial court continued the hearing until May 12, 1997. At a review hearing on February 12, 1997, the trial court learned mother had again run away and her whereabouts had been unknown since October, 1996. At the hearing on SCDHS's Motion for Permanent Custody of Devonte and Jequan on May 12, 1997, the trial court terminated the parental rights of mother and the two alleged fathers.[2]
At the best interest hearing on June 9, 1997, Stacy Senff, a former SCDHS family service worker, testified regarding the relatives who had expressed an interest in the placement of the children. Regarding the home study of Dewanna Mitchell, mother's other sister, Senff explained she made an interstate contact with the State of Kansas in July, 1996. However, the Kansas agency was unable to contact Dewanna and complete a home study. Senff later learned Dewanna had moved from Kansas to Ohio, but never informed SCDHS she was living in the Akron area.
Regarding the home study of Richard Rollinson, Senff stated Rollinson had been approved for placement of Jequan and said placement did occur. However, the placement terminated after Rollinson underwent surgery on his thumbs, which rendered him unable to care for Jequan. Senff further stated Rollinson would not be considered an appropriate adoptive placement because of the felony conviction. She added placement would also not be proper because Rollinson showed poor judgment when he placed mother and Jequan on a bus to Canton without notifying the Agency.
Regarding the home study of Molly Claxton, mother's aunt, Senff testified the Franklin County Children Services approved her home for placement. The case worker explained the children were not placed with Claxton for a number of reasons. In particular, Claxton had informed Senff that she was not interested in adopting the children, but only in keeping them until mother was old enough to care for the children.
Cindy Worlow, the current family service worker, also testified. She likewise testified Claxton had been investigated and approved by Franklin County Children Services as having an appropriate home for placement. Worlow explained, despite the approval by Franklin County, SCDHS did not place the children with Claxton due to Worlow's concerns regarding Claxton's statements that she would return Devonte and Jequan to mother if mother showed Claxton she could be a responsible person.
Based upon the evidence, the trial court terminated the parental rights of mother and granted permanent custody to SCDHS. This decision was memorialized in a Judgment Entry dated June 18, 1997.
It is from this Judgment Entry mother prosecutes this appeal raising as her sole assignment of error:
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED AN ERROR AT LAW WHEN IT GRANTED PERMANENT CUSTODY TO THE DEPARTMENT OF HUMAN SERVICES RATHER THAN TO A RELATIVE OF THE CHILDREN.
Grandmother appeals from the same raising as error:
 THE TRIAL COURT'S ORDER SHOULD BE VACATED BECAUSE THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY AWARDING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES RATHER THAN TO A FAMILY MEMBER, MOLLY CLAXTON, WHEN SUCH ORDER WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE TO BE IN THE BEST INTERESTS OF THE CHILDREN.
In her sole assignment of error, mother contends the trial court abused its discretion and erred as a matter of law in granting permanent custody of the children to SCDHS when suitable relatives, i.e., Richard Rollinson, mother's uncle, and Molly Claxton, mother's aunt, were available for placement. Grandmother asserts the identical assignment of error, but only as to the trial court's decision not to place the children with Molly Claxton.
R.C. 2151.412(G) provides, in pertinent part:
 (G) In the agency's development of a case plan and the court's review of the case plan, the agency and the court shall be guided by the following general priorities:
* * *
 (2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family;
* * *
 (5) If the child cannot be placed with either of his parents within a reasonable period of time or should not be placed with either, if no suitable member of the child's extended family or suitable nonrelative is available to accept legal custody of the child, and if the agency has a reasonable expectation of placing the child for adoption, the child should be committed to the permanent custody of the public children services agency or private child placing agency.
(Emphasis added).
The language of R.C. 2151.412(G) is precatory rather than mandatory. See, In Re: Hiatt (1983), 86 Ohio App.3d 716; In Re:Dixon (Nov. 29, 1991), Lucas App. No. L-91-021, unreported; In Re:Cundiff (Nov. 20, 1995), Stark App. No. 1995 CA 00102, unreported. Consequently, this statute does not require the trial court to act in a specific manner, but rather suggests criteria to be considered in making its decision regarding case plan goals.Dixon, supra.
Regarding mother's argument that Richard Rollinson was a suitable member of the children's extended family and; therefore, should have been considered for legal custody, the evidence presented establishes Rollinson has a previous felony conviction. This felony conviction makes Rollinson ineligible to adopt the children. Accordingly, we find the trial court did not abuse its discretion in determining that Richard Rollinson was not a suitable relative with whom to place the children.
Regarding mother and grandmother's argument that Molly Claxton was a suitable relative for placement, the record reflects that Claxton was investigated and approved by Franklin County Children Services for possible placement for Devonte in May, 1996. Later that year, Claxton called SCDHS and expressed an interest in both children. However, in the course of the conversation, Claxton indicated, if mother was able to get her life together, and could show Claxton she could be a responsible person, Claxton would give the children back to mother. Claxton reiterated this sentiment to the trial court. This statement clearly reveals Claxton intended to take it upon herself to determine when Devonte and Jequan should be reunified with mother. Furthermore, because Claxton anticipated reuniting mother with the children, Claxton communicated a disinterest in adopting Devonte and Jequan. Additionally, Claxton had never had any contact with the children.
After the trial court made a determination to terminate mother's parental rights, Claxton's attitude regarding reunification as expressed in her statements to SCDHS and the trial court gave the trial court a valid reason for not ordering placement of the children with her. As such, we find the trial court's decision to grant permanent custody of Devonte and Jequan to SCDHS was not arbitrary, capricious, or unreasonable.
Accordingly, mother's and grandmother's assignments of error are overruled.
The Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
By: Hoffman, J., Farmer, P.J. and Gwin, J. concur.
 JUDGMENT ENTRY
CASE NO. 97CA00206
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
 JUDGMENT ENTRY
CASE NO. 97CA00243
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] Appellants have not appealed the trial court's adjudicatory decision to terminate Tamara Rollinson's parental rights, but rather appeal only the trial court's dispositional decision not to grant legal custody to a relative.
[2] Neither father is a party to this appeal.