OPINION *Page 3 
{¶ 1} Appellant David Colaner, Sr. ("Father") appeals the July 24, 2007 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated Father's parental rights, privileges and responsibilities with respect to his minor son and placed the child in the permanent custody of appellee Tuscarawas County Job and Family Services ("the Department").
 STATEMENT OF THE CASE AND FACTS {¶ 2} On June 30, 2005, the Department filed a Complaint in the Tuscarawas County Court of Common Pleas, Juvenile Division, alleging Anna Colaner (DOB 7/14/90), David Colaner, Jr. (DOB 9/29/94), Katelyn Colaner (DOB 9/19/98), and James Colaner (3/21/00) were neglected and dependent children. The biological parents of the children are Father and Edna Merrianne Gambs ("Mother").
 {¶ 3} The Complaint was filed as a result of incidents occurring on June 27, 2005. On that day, Deputy Chris Douglas of the Tuscarawas County Sheriffs Department was dispatched to the Colaner residence to investigate a complaint from an individual who purchased a puppy from Father. Sgt. Douglas arrived at 4:35pm and found Anna babysitting David. Anna indicated she did not know Father's whereabouts or when he would return. Sgt. Douglas subsequently learned there was an outstanding warrant for Father's arrest. At 6:00pm, the sheriff's department dispatcher reported a call from an individual claiming to be Father and advising he would not be home for several days. Sgt. Douglas became concerned the children would be unsupervised for several days, including overnights, and reported the situation to the Department. *Page 4 
 {¶ 4} Sgt. Douglas along with Jaime Grunder, an investigator in the Protective Unit of the Department, and Dep. Rennicker proceeded to the Colaner residence where they found Anna and the youngest sibling, Jamie. After Anna granted them permission to enter the home, Sgt. Douglas and Grunder found the residence to be in deplorable condition. The carpet was cluttered, filthy, and stained with urine and feces. Sgt. Douglas and Grunder observed an oxygen tank located in the dining room with an ashtray situated nearby. Sgt. Douglas and Grunder also found twenty-two dogs and puppies, some of which were newborn. While at the Colaner residence, Sgt. Douglas and Grunder became concerned about the supervision of the children as well as ongoing allegations of inappropriate sexual conduct made by Father and the children against Mark Gambs, Mother's husband. The children were removed from the residence and placed with relatives under a safety plan.
 {¶ 5} The Magistrate conducted an adjudicatory hearing on August 10, 25, and 30, 2005. Via Decision filed September 19, 2005, the Magistrate found there was no clear and convincing evidence the Colaner children were neglected and the neglect charge was dismissed. However, the magistrate found the children were dependent and placed them in the temporary custody of the Department. The matter proceeded to disposition on September 27, 2005, at which time the trial court adopted the case plan and ordered the children remain in the temporary custody of the Department.
 {¶ 6} Father filed timely objections to the magistrate's decision. The trial court conducted an objection hearing on November 21, 2005. Via Judgment Entry filed November 30, 2005, the trial court overruled Father's objections and adopted the magistrate's decision adjudicating the children dependent. Father filed a timely appeal *Page 5 
to this Court, seeking review of the trial court's finding of dependency. This Court affirmed the trial court's decision. In theMatter of Colaner Children (May 2, 2006), Tuscarawas App. No. 2005AP120084, unreported.
 {¶ 7} Prior to this Court's issuing its opinion, Father filed a motion for visitation, and Mother filed a motion for increased visitation and custody. The Department had terminated Father's supervised visits as the result of his engaging in a pattern of inappropriate and threatening behavior toward Beth Bertini, a social worker. The trial court subsequently placed the children in the temporary custody of Mother under the protective supervision of the Department. Following a hearing on December 5, 2006, David, Jr. was placed in the temporary custody of the Department. Mother reported she discovered drawings by David, Jr. which she perceived as threats to her safety and the safety of the other children. The Department and the guardian ad litem expressed frustration with Mother due to her failure to follow through with the necessary counseling for David, Jr. The Department and the guardian ad litem believed Mother had actually set up David, Jr. to fail, having no intention of maintaining him in her home long term.
 {¶ 8} Father's parents, Charles and Norene Colaner, came forward and requested a home study. The Department requested Grandparents undergo psychological evaluations prior to the Department's recommending placement because of Grandparents' earlier behavior. As of the Department's filing its Motion to Modify prior Disposition on March 1, 2007, Grandparents had failed to undertake the evaluations or maintain contact with the Department. The trial court conducted a hearing on the Department's motion on April 11, 2007. With the consent of both parents and upon recommendation of the guardian ad litem, the trial court ordered Anna, *Page 6 
Katelyn, and Jamie remain in the custody of Mother and the Department's protective supervision over the children be terminated. Mother advised the trial court she was not opposed to granting permanent custody of David, Jr. to the Department. Father, however, did oppose such disposition. The trial court scheduled a permanent custody hearing for July 12, 2007.
 {¶ 9} Following the trial court's changing the custody status of Anna, Katelyn, and Jamie, the Department filed a proposed amendment to the case plan to update the strengths and concerns of the case relative to David, Jr. Grandparents filed an objection to the case plan, which the trial court dismissed, finding Grandparents had no legal standing to file such motion. Subsequently, the guardian ad litem filed his report, expressing his opinion David, Jr.'s best interest would be served by granting permanent custody to the Department as such would offer the boy the possibility of a stable and secure adoptive placement. The guardian indicated placing David, Jr. with Grandparents would ensure the boy would be exposed to Father and Father's controlling, disruptive and defiant behaviors. The guardian asked David, Jr. with whom he would like to live if he could decide, and the boy never mentioned Father or Grandparents.
 {¶ 10} Father did not appear at the permanent custody hearing as he is battling cancer and lives in a nursing home. Grandparents presented five witnesses on their behalf. These individuals have known Grandparents for as long as fifty years, and described them as honest and hardworking people. The witnesses also described Grandparents as kind, loving and nurturing. *Page 7 
 {¶ 11} Grandparents had been married for 47 years. Grandfather was an Ohio Highway patrolman, and retired from Gradall Company after 22 years of employment. Neither Grandfather not Grandmother had any criminal conviction of any kind. Grandparents raised two other children, both of whom are in successful marriages with their own children. Grandfather testified the Department had advised him he and Grandmother needed to have psychological evaluations before the trial court would consider them for placement. Grandfather explained they did not undergo the evaluations because of the cost and his belief they did not need them. When Grandparents were eventually evaluated, the assessments indicated they both would be appropriate parents. The Department found their home to be a suitable place to raise a child. Neither Grandfather nor Grandmother fully acknowledged David, Sr.'s negative behavior. They were reluctant to pass any blame on Father or condemn his manner of handling his divorce from Mother. Both Beth Bertini and the guardian ad litem expressed concerns over Grandparents' commitment to preventing David, Jr. from having contact with Father.
 {¶ 12} Via Judgment Entry filed July 24, 2007, the trial court terminated Father's parental rights, privileges and responsibilities with respect to David, Jr., granted permanent custody of the boy to the Department, and denied Grandparents' motion for custody.
 {¶ 13} It is from this judgment entry Father appeals, raising as his sole assignment of error:
 {¶ 14} "I. THE TRIAL COURT'S DECISION TO DENY THE PATERNAL GRANDPARENTS MOTION FOR CUSTODY AND GRANT PERMANENT CUSTODY *Page 8 
TO TUSCARAWAS COUNTY JOB AND FAMILY SERVICES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE PURSUANT TO R.C. 2151.414."
 {¶ 15} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.1(C).
 I {¶ 16} In his sole assignment of error, Father maintains the trial court's decision to deny Grandparents' Motion for Custody and to grant permanent custody of David, Jr. to the Department was against the manifest weight of the evidence.
 {¶ 17} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 18} Furthermore, it is well-established "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In reMauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quoting In reAwkal (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424. *Page 9 
 {¶ 19} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 20} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 21} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the *Page 10 
child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 22} Specifically, Father argues the trial court failed to consider the best interests of David, Jr. in reaching its decision to deny Grandparents' Motion for Custody. Father explains David, Jr. had been moved from one placement to another, and the Department had "completely cut [the boy] off from all ties to any blood relatives". Brief of Appellant at 9. Father concludes, "With a father who is too ill to care for him, a mother who abandoned him, and TCJFS inability to find permanent placement for him, despite shuffling him to three (3) different foster homes while he was in their custody, it was in the best interests of the minor child to placed [sic] with his maternal grandparents, Charles and Norene Colaner." Id.
 {¶ 23} R.C. 2151.412(G) sets forth the general priorities by which a public children's services agency and the trial court shall be guided with regard to the development and review of the case plan. R.C.2151.412(G)(2) provides if a child cannot be placed in the legal custody of his parents, the child should be placed "in the legal custody of a suitable member of the child's extended family[.]" However, "Ohio's Courts have consistently recognized the language in R.C. 2151.412(G) is precatory, not mandatory * * * [R.C. 2151.412] does not command the juvenile court to act in a specific manner. Instead, the statute sets out general, discretionary priorities to guide the court. So while the guidelines may be helpful to the juvenile court, it is not obligated to follow them". See, In Re: Halstead, Columbiana App. No. 04CO37, 2005-Ohio-403; In Re: Hyatt (1993), 86 Ohio App. 3d 716, 722. *Page 11 
 {¶ 24} Recognizing the general priorities regarding placement of a child are discretionary, we, nonetheless, find the trial court should have granted legal custody of David, Jr. to Grandparents. The trial court voiced its concerns about Grandparents' ability to influence and discipline David, Jr. in an appropriate way, reasoning Father was raised by Grandparents and they are reluctant to view Father's behavior negatively. We find the fact a parent wants to believe or refuses to condemn his adult child does not equate to an inability of that parent to raise his grandchild in an appropriate manner. The testimony noted, supra, clearly indicated Grandparents have proved successful parents in the past. Although David, Jr. did not express a specific desire to live with Grandparents, he did express his desire to maintain a relationship with his sisters. Grandparents would be able to keep this sibling bond strong and in tact. Further, David, Jr. would have the benefit of time with his extended family — aunts, uncles, and cousins. At the permanent custody hearing, Grandparents each testified they would not allow Father to see David, Jr. We have no reason to disbelieve their testimony regardless of their unwillingness to see the negative behaviors of their son and note Father's health prognosis makes future contact between David, Jr. and Father unlikely even if Grandparents would break their promise.[1]
 {¶ 25} Father's sole assignment of error is sustained. *Page 12 
 {¶ 26} The case is reversed and the matter remanded to the trial court for further proceedings consistent with this opinion and the law.
 Hoffman, P.J., Farmer, J. and Delaney, J. concur *Page 13 
 JUDGMENT ENTRY
For the reason stated in our accompanying Memorandum-Opinion, the case is reversed and the matter remanded to the trial court for further proceedings consistent with this opinion and the law. Costs assessed to Appellee.
[1] In such an event, the Department would be able to reinitiate the appropriate proceeding to remove David, Jr. from the custody. *Page 1