**In re HIATT et al.**

[Cite as *In re Hiatt* (1993), 86 Ohio App.3d 716.]

Court of Appeals of Ohio,
Adams County.

No. CA–541.

Decided March 16, 1993.

*Alan W. Foster,* Adams County Prosecuting Attorney, for appellee.

*John H. Lawler,* for appellant.

HARSHA, Judge.

William Hiatt appeals from a judgment granting permanent custody of his natural children, Tiffany Hiatt and Amber Hiatt (as well as his stepdaughter, Stephanie Bolar), to the Adams County Children Services Agency ("ACCSA").[1]

Appellant assigns the following error:

"The trial court erred in that no clear and convincing evidence established that permanent custody of Tiffany and Amber Hiatt should be awarded to the Adams County Children's Services Agency based upon the requirements of Chapter 2151 of the Revised Code."

ACCSA filed a complaint which claimed that Stephanie Bolar was an abused child and that Tiffany and Amber Hiatt were dependent children. The three children had previously resided with their natural mother, Patti Hiatt, and appellant, who was the natural father of Tiffany and Amber Hiatt and the stepfather of Stephanie Bolar. ACCSA sought permanent custody of the children. Following an adjudicatory hearing on ACCSA's complaint, the trial court determined that Stephanie Bolar was an abused child and that Tiffany and Amber Hiatt were dependent children. Pending a dispositional hearing, Mary Hiatt, the paternal grandmother of Tiffany and Amber Hiatt, and Helen Merz,

---

1. Neither the children's natural mother, Patti Hiatt, the guardian *ad litem,* nor any member of the parents' extended families has filed a brief in this appeal.

paternal aunt of Tiffany and Amber Hiatt, filed requests for custody of Tiffany and Amber.

Subsequently, a dispositional hearing produced the following evidence.[2] Beginning in August 1990, when Stephanie Bolar was thirteen years old, she was sexually abused by appellant on several occasions. Appellant forcibly ejaculated on her, at times when her mother, Patti Hiatt, was also present, and had other sexual contact with Stephanie. Appellant bragged about his activities to members of his family. Stephanie advised other relatives of appellant, including appellant's mother, Mary Hiatt, and appellant's sisters, Helen Merz and Brenda Hiatt, of appellant's sexual abuse. However, neither Patti Hiatt, Mary Hiatt, nor Helen Merz took any action to either protect Stephanie or alert appropriate authorities. Brenda Hiatt did anonymously report the sexual abuse to ACCSA, which eventually sent a caseworker to investigate the charges. The ACCSA caseworker found insufficient evidence to file charges and settled the matter by acquiescing in appellant and Patti Hiatt's agreement to let Stephanie live with Mary Hiatt temporarily.

Stephanie eventually returned to the family's trailer and appellant's sexual abuse of her resumed. On September 14, 1991, appellant ejaculated on her when she was wearing a black spandex outfit. Stephanie advised her school counselor of this incident and an ACCSA caseworker took a statement from her. On September 17, 1991, police retrieved Stephanie's black spandex clothing from appellant and Patti Hiatt's trailer. ACCSA obtained emergency custody of Stephanie that same day, but Tiffany and Amber remained in the custody of appellant and Patti Hiatt. Subsequent tests performed on Stephanie's black spandex outfit revealed the presence of semen.

On October 7, 1991, while Stephanie was still in the custody of ACCSA, appellant and Patti Hiatt kidnapped Stephanie and took her to Florida along with Tiffany and Amber. At the time, Tiffany was just starting kindergarten. Prior to reaching Florida, appellant sexually abused Stephanie in an Ashland, Kentucky motel room with Patti Hiatt, Tiffany and Amber all present. Although Mary Hiatt knew that appellant, Patti Hiatt, and the children were in Florida, she did not divulge this information to authorities. On November 6, 1991, appellant and Patti Hiatt were arrested in Florida and were returned with the children to Ohio. Patti Hiatt gave statements to law enforcement officers and ACCSA representatives that admitted appellant's sexual abuse of Stephanie, Patti Hiatt's presence during some of the incidents of sexual abuse, and their kidnapping of Stephanie.

---

2. At the dispositional hearing, the trial court took judicial notice of the evidence introduced at the adjudicatory hearing and further indicated, without objection by any of the parties, that it would consider the predispositional reports of the ACCSA and a probation department investigator as well as the report of the guardian *ad litem* in its decision.

ACCSA reacquired custody of Stephanie and also obtained emergency custody of Tiffany and Amber.

Although there was no evidence admitted at either the adjudicatory or dispositional hearings indicating that appellant had sexually abused Tiffany or Amber Hiatt, Stephanie testified that she feared that appellant would eventually sexually abuse them. Stephanie further testified that on at least one of the occasions that appellant molested her, the two younger girls opened the door and became visibly upset about it. During supervised visits with Patti Hiatt, Tiffany became moody and Amber was more physically aggressive. Tiffany's educational level did not improve, according to Helen Merz, during the school year in which appellant and Patti Hiatt pulled her out of kindergarten for a month while they were kidnapping Stephanie.

At the time of the dispositional hearing, appellant was incarcerated on the pending kidnapping and sexual abuse charges, whereas Patti Hiatt was free on bond on the kidnapping charge. ACCSA caseworker supervisor Bobbi Moore testified that the best interests of the children required that the agency be granted permanent custody of them. The predispositional report of investigator Michael Evans also recommended that the trial court grant ACCSA's request for permanent custody. The guardian *ad litem* noted in his report that maternal aunt Janice Patrick was the best relative placement choice for Tiffany and Amber. At the conclusion of the dispositional hearing, the trial court rendered a lengthy oral decision granting permanent custody of Stephanie, Tiffany, and Amber to ACCSA. The trial court determined that granting legal custody of any of the children to Janice Patrick, Mary Hiatt, or Helen Merz would not be in the children's best interest. On August 26, 1992, the trial court entered a judgment granting permanent custody of all three children to ACCSA.

Appellant's sole assignment of error asserts that the trial court erred in that no clear and convincing evidence established that permanent custody of Tiffany and Amber Hiatt should be awarded to ACCSA. Appellant raises two separate contentions under his assignment of error. Appellant initially argues that the trial court failed to properly apply R.C. 2151.412(G), which provides:

"(G) In the agency's development of a case plan and the court's review' of the case plan, the agency and the court shall be guided by the following general priorities:

"(1) A child who is residing with or can be placed with his parents within a reasonable time should remain in their legal custody even if an order of protective supervision is required for a reasonable period of time;

"(2) *If both parents* of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child

even with reasonable assistance, or *have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family;*

"(3) If a child described in division (G)(2) of this section has no suitable member of his extended family to accept legal custody, the child should be placed in the legal custody of a suitable nonrelative who shall be made a party to the proceedings after being given legal custody of the child;

"(4) If the child has no suitable member of his extended family to accept legal custody of the child and no suitable nonrelative is available to accept legal custody of the child and, if the child temporarily cannot or should not be placed with his parents, guardian, or custodian, the child should be placed in the temporary custody of a public children services agency or a private child placing agency;

"(5) *If the child cannot be placed with either of his parents within a reasonable period of time or should not be placed with either, if no suitable member of the child's extended family or suitable nonrelative is available to accept legal custody of the child,* and if the agency has a reasonable expectation of placing the child for adoption, the *child should be committed to the permanent custody of the public children services agency* or private child placing agency." (Emphasis added.)

Appellant contends that the trial court erred in granting permanent custody of Tiffany and Amber to ACCSA when suitable relatives such as his mother, Mary Hiatt, and his sisters, Helen Merz and Brenda Hiatt, were available to accept legal custody. Initially, we must determine if appellant has the requisite standing to raise this issue since none of the aforementioned relatives appealed from the trial court's permanent custody award.

 Appeal lies only on behalf of a party aggrieved by the final order appealed from; appeals are not allowed for the purpose of settling abstract questions, but only to correct errors injuriously affecting the appellant. *Ohio Domestic Violence Network v. Pub. Util. Comm.* (1992), 65 Ohio St.3d 438, 439, 605 N.E.2d 13, 13; *Ohio Contract Carriers Assn. v. Pub. Util. Comm.* (1942), 140 Ohio St. 160, 23 O.O. 369, 42 N.E.2d 758, syllabus; *In re Woodworth* (Dec. 10, 1992), Cuyahoga App. No. 63038, unreported, 1992 WL 369233. An appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant. *In re Smith* (1991), 77 Ohio App.3d 1, 13, 601 N.E.2d 45, 52; see, also, *In re Johnson* (Nov. 30, 1990), Lucas App. No. L-90-011, unreported, 1990 WL 187260, where the Sixth Appellate District notes two divergent standards on this issue. If the trial court had granted legal custody to one of appellant's relatives rather than permanent

custody to ACCSA, appellant would have retained residual parental rights, privileges and responsibilities. R.C. 2151.011(B)(10) and (11). However, by granting ACCSA permanent custody of Tiffany and Amber, the trial court divested appellant of all parental rights, privileges, and obligations, including all residual rights and obligations. R.C. 2151.011(B)(12). Accordingly, appellant has standing to assert on appeal that the trial court erred in not granting legal custody to one of his relatives rather than permanent custody, since he was prejudiced to the extent that it affected his residual parental rights.

█ Appellant's specific contention is that the trial court failed to apply the "mandate" of R.C. 2151.412(G). R.C. 2151.412(G) sets forth rather oxymoronic "mandatory guidelines" for an agency's development and the court's review of case plans. See, also, Kurtz & Giannelli, Ohio Juvenile Law (2 Ed.1989) 174–175, T 13.05(E). R.C. 2151.412(G) does not appear to address permanent custody proceedings where the evidence indicates that reunification with the children's natural parents is not imminent and desirable. In *In re Dixon* (Nov. 29, 1991), Lucas App. No. L–91–021, unreported, 1991 WL 325657, the Sixth Appellate District rejected a contention that R.C. 2151.412(G) required an award of legal custody to a relative rather than permanent custody to a public children services agency by stating:

"As can be seen by the statutory language cited above the section relied upon by appellant is precatory rather than mandatory. Accordingly, the section cited by appellant Dixon–Powell does not mandate the LCCSB or the court to act in any specific manner, but rather suggests some criteria to be considered in making a decision as to case plan goals. More relevant to the instant case are the specific requirements relating to actions for permanent custody enumerated in R.C. 2151.413 and 2151.414."

We agree with the rationale of the *Dixon* court that R.C. 2151.412(G) did not require the trial court to follow the priorities listed therein in rendering its permanent custody decision. R.C. 2151.353(A) lists five dispositional alternatives available to the court after a finding of abuse, neglect or dependency. The court may "make any of the * * * orders of disposition," including permanent custody.

█ Moreover, assuming, *arguendo,* that R.C. 2151.412(G) did require the trial court to consider placing legal custody of Tiffany and Amber with one of appellant's relatives, it is apparent that the trial court considered such option in its best-interest determination. Of the three relatives mentioned by appellant on appeal, Brenda Hiatt failed to file a motion requesting legal custody of Tiffany and Amber prior to the dispositional hearing as required by R.C. 2151.353(A)(3). Of the two remaining relatives, Mary Hiatt had a 1985 conviction for complicity in theft and forgery regarding stolen Social Security retirement checks and Helen

Merz had similar charges dismissed after she paid restitution. Neither protected Stephanie from appellant's sexual abuse, although they were both aware of appellant's conduct. Mary Hiatt failed to send some of her children to school when they were growing up, resulting in truancy charges. Mary Hiatt could not read or write and further failed to notify authorities of appellant and Patti Hiatt's whereabouts during their kidnapping of Stephanie. Neither Mary nor Helen had been employed for several years, and Helen's husband, Bob Merz, had deliberately refused to pay child support for any of his eight children. Based upon the foregoing evidence, the trial court's decision not to grant legal custody of Tiffany and Amber to either Mary Hiatt, Helen Merz, or Brenda Hiatt was supported by some competent, credible evidence. Appellant's first contention under his first assignment of error is thus meritless.

Appellant's second contention is that the trial court erred in failing to determine the disposition requirements mandated by R.C. 2151.414 for each minor child independent of the others. Appellant essentially claims that the trial court had to consider the statutory criteria for Tiffany and Amber separately from the same criteria as applied to Stephanie. Although parents who are suitable persons generally have a paramount right to custody of their minor children, *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, 1171, the rights and interests of natural parents are not absolute. See, *e.g.,* R.C. 2151.414; *In re Cunningham* (1979), 59 Ohio St.2d 100, 104–108, 13 O.O.3d 78, 80–82, 391 N.E.2d 1034, 1037–1039; *Reynolds v. Goll* (1992), 80 Ohio App.3d 494, 609 N.E.2d 1276.

R.C. 2151.414 [3] provides:

"(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

"(1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;

" * * * *

"(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section

---

**3.** This case arose pursuant to an initial dispositional proceeding. R.C. 2151.353(A)(4) makes R.C. 2151.414(D) and (E) applicable to the permanent custody determination in such proceedings.

2151.353 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

" * * *

"(2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;

" * * *

"(4) The custodial history of the child;

"(5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.

"(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;

" * * *

"(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

"(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

"(6) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing;

" * * *

"(8) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect."

 We agree with the appellant that the law requires the trial court to make an independent determination of the relevant criteria in R.C. 2151.414(B) and all other relevant evidence independently for each child in a multichild permanent custody proceeding.[4] However, this should not be construed to require courts to consider permanent custody decisions in a vacuum, *i.e.*, how a parent mistreats another child in the household can be very relevant to the permanent custody determination of a child that is not mistreated in the same manner. See, *e.g.*, R.C. 2151.414(E)(5), which notes that the fact that a parent is incarcerated for an offense committed against a "sibling of the child" is relevant to a determination of whether a child cannot or should not be placed with his or her parents. Indeed, this appears to comport with R.C. 2151.04(D)(2), which defines "dependent children" to include those children who, because of the circumstances surrounding the abuse of a sibling in the same household, are also in danger of being abused or neglected by the parents in the same household. Both Tiffany and Amber were adjudicated to be dependent children. Those dispositions were not challenged on appeal. A child need not be placed in risk of immediate and unavoidable harm before a court can determine that such environment is unhealthy or unsafe, *i.e.*, not in their best interest. *In re Bishop* (1987), 36 Ohio App.3d 123, 521 N.E.2d 838; cf., also, *In re Massengill* (1991), 76 Ohio App.3d 220, 225–226, 601 N.E.2d 206, 209–210.

 The R.C. 2151.414 permanent custody determination must be supported by clear and convincing evidence. *In re Harding* (Jan. 14, 1993), Cuyahoga App. No. 63520, unreported, 1993 WL 7914; *In re Stapleton* (June 12, 1991), Scioto App. No. 1964, unreported, 1991 WL 110217. "Clear and convincing evidence" is defined as that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cincinnati Bar Assn. v. Massengale* (1991), 58 Ohio St.3d 121, 122, 568 N.E.2d 1222, 1222. An appellate court, in reviewing awards of permanent custody of children to public children services agencies, will affirm judgments supported by some competent, credible evidence. *Jones v. Lucas Cty. Children Serv. Bd.* (1988), 46 Ohio App.3d 85, 86, 546 N.E.2d 471, 472; *Stapleton, supra*, at 14.

 Here, there was evidence that Tiffany and Amber were present on perhaps two occasions when appellant sexually molested their stepsister. Stephanie testified that Tiffany and Amber were visibly upset by one of the

---

**4.** In other words, a trial court would not have to automatically grant permanent custody of a child once it determined that permanent custody was appropriate for a sibling of the child.

incidents, and that she was fearful that appellant would eventually sexually abuse them. Appellant and Patti Hiatt's kidnapping of Stephanie resulted in uprooting Tiffany and Amber as well, which caused Tiffany to miss at least a month of kindergarten and arguably contributed to her lack of educational improvement for the year. During supervised visits with Patti Hiatt, Tiffany was moody and Amber became more physically aggressive. Moreover, although it was unclear at the time of the dispositional hearing how long appellant and Patti Hiatt would be incarcerated for their pending criminal charges, these were relevant factors for the trial court's determination. Cf. *In re Nelson* (Sept. 22, 1989), Lake App. No. 13–123, unreported, 1989 WL 110818; *In re Hederson* (1986), 30 Ohio App.3d 187, 30 OBR 329, 507 N.E.2d 418. Both ACCSA casework supervisor Moore and probation department investigator Evans recommended that the trial court grant permanent custody of all three children to the agency.

In short, there was competent, credible evidence to support the trial court's determination that permanent custody was in the best interest of Tiffany and Amber and that they could not be placed with appellant and/or Patti Hiatt within a reasonable time or should not be placed with appellant and/or Patti Hiatt.

 A reviewing court should be guided by the presumption that the findings of the trial court are correct, since the trial judge "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use their observations in weighing the credibility of the proffered testimony." *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181, 1184, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276. Furthermore, appellant's assertions to the contrary notwithstanding, our review of the record indicates that the trial court considered the relevant criteria and evidence for each child individually, including Tiffany and Amber. Moreover, R.C. 2151.414(C) requires the court to make findings of fact and conclusions of law where permanent custody is granted "upon the request of any party." Appellant failed to do so.

Based upon the foregoing, appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PETER B. ABELE and GREY, JJ., concur.