[Cite as *In re M.H.*, 2011-Ohio-5140.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
VINTON COUNTY

| | | |
|---|---|---|
| In the Matter of: | : | Case No. 11CA683 |
| M.H. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| | | **RELEASED:  09/19/11** |

_____

APPEARANCES:

John K. Clark, Jr., Jackson, Ohio, for appellant.

Austin B. Campbell, Vinton County Prosecuting Attorney, McArthur, Ohio, for appellee.
_____

Harsha, P.J.

{¶1}  Mother appeals the grant of the permanent custody of her daughter, M.H., to the Vinton County Department of Job and Family Services (VCDJFS) and argues that the trial court's decision was against the manifest weight of the evidence.  However, the record contains some competent and credible evidence that granting custody to VCDJFS was in M.H.'s best interest.  Specifically, evidence supports the court's findings that Mother failed to remedy issues related to housing, employment, visitation, and counseling as called for in the reunification plan and that M.H. did not wish to be returned to Mother's custody.

{¶2}  Next, Mother contends that the trial court erred in finding that VCDJFS made reasonable efforts to either reunite her with M.H. or to place M.H. with a suitable relative.  However, the trial court was not required to make a "reasonable efforts" finding when the child has been in the custody of the agency for more than twelve months of a consecutive twenty-two-month period.  Likewise, the court's award of permanent

custody was proper because the statutory language referring to relative placement is precatory and serves only as a discretionary guideline.

{¶3}    Mother next contends that VCDJFS violated her due process rights by poorly managing her reunification case plan.  Although VCDJFS could have been more zealous in their attempts to administer Mother's case plan, the record reveals that Mother herself made minimal efforts at best in complying with the plan,  including the failure to communicate the address where she was living in a timely manner, report her employment status, and attend scheduled visitations.  Consequently, we perceive no due process violation in VCDJFS' management of the reunification case plan.

{¶4}    Finally, Mother argues that VCDJFS "bargained in bad faith" when they agreed to dismiss a motion for permanent custody of M.H. in return for her voluntarily surrendering permanent custody of several other of her children.  However, there is no evidence in the record to support the conclusion that such an agreement existed.  Accordingly, we affirm the decision of the juvenile court.

## I.  Facts

{¶5}    In 2008, M.H. and six of her siblings were alleged to be neglected and dependent children.  The court granted temporary custody of the children in March 2008 to VCDJFS on the basis that Mother and Father lacked adequate housing.  After the state withdrew the allegations of neglect, Mother and Father admitted that all seven children were dependent under R.C. 2151.04(C).  Accordingly, the court adjudicated the children dependent and ordered them to remain in the temporary custody of VCDJFS.  While in the temporary custody of the agency, M.H. resided with foster parents.

{¶6}    After VCDJFS subsequently filed a motion for permanent custody of all seven children, Mother and Father voluntarily agreed to surrender permanent custody of four of the children.  By agreement of the parties the court also placed two of the children into a "planned permanent living arrangement."  Finally, the parties agreed that M.H., the youngest of the children, should remain in the temporary custody of VCDJFS and that the agency would prepare a new case plan with the goal of reuniting the mother and child.[1]

{¶7}    In February 2010, VCDJFS filed the new case plan, which identified the following problems that prevented reunification:

> [Mother] is unable to meet the basic needs of the child.  When placed with
> [Mother], [M.H.] has had poor [attendance] at school.  The child did not
> attend school for periods of time.  [Mother] did not provide adequate
> supervision or parenting to [M.H.]. [Mother] is dealing with issues from the
> past and the current surrender of her other six children.   [Mother] has a
> history of responding to stressors in a negative manner.  Additionally, after
> January 7, 2010 [Mother] will no longer have a home as she states she is
> moving.

{¶8}    The plan called for the following changes on Mother's part:

1.  [Mother] will need to be able to meet the basic needs for [M.H.],
including a stable, safe and drug free home.

2.  [Mother] will need to find a suitable place to live.

---

[1] It appears that VCDJFS did not include Father in a case plan.  He participated in the motion for permanent custody but ultimately did not oppose the motion and did not seek to regain custody of M.H. According to her brief, Mother and Father, while legally married, separated many years ago.

3. [Mother] will complete parenting classes to learn healthier ways to cope with her child for the appropriate age level.

4. [Mother] will have an assessment complete[d] by ISS and learn how to deal with stressors, in an appropriate manner.

5. [Mother] will have an assessment for HRS completed and follow the recommendations from the counselor.[2]

**{¶9}** VCDJFS agreed to the following:

1. Worker will request progress notes weekly and monthly from HRS, and ISS.

2. Worker will receive verification that [Mother] attended Parenting Classes.

3. Worker will have weekly contact with [Mother] by phone and face to face reviewing the progress on the goals.

4. Worker will perform home study and safety audit when [Mother] obtains new housing.

**{¶10}** In February 2010, VCDJFS also sought to dismiss its still pending motion for permanent custody of M.H. In two subsequent entries the court granted the agency's motion and noted that the agency "indicated it would be dismissing its motion for permanent custody and then refilling [sic] it." VCDJFS filed a new motion for permanent custody of M.H. under R.C. 2151.413 in July 2010.

**{¶11}** Ultimately the court held a two-day final custody hearing on the motion. There Patty Smith, Mother's caseworker at VCDJFS testified that Mother cancelled some visitations with M.H. in 2010 claiming illness or car issues. Smith indicated that

---

[2] Apparently, HRS and ISS are counseling programs addressing stress and substance addiction.

Mother displayed a lack of supervision at a March visitation with M.H. and two of her other siblings.  On another visitation in April 2010, Mother was thirty minutes late.

**{¶12}**  Smith testified that Mother told her in March 2010 that Mother was working at a Wal-Mart store but would not tell Smith an address to allow her to verify employment.  Smith also claimed that she had problems communicating with Mother because Mother had more than five different telephone numbers in the year leading up to the custody hearing.

**{¶13}**  Smith claimed that Mother provided no evidence that she was staying in a home as of April 2010 and that on May 27, 2010, Mother told her she did not have an address. Smith testified that Mother at some point provided her or Smith's supervisor, Sara Zinn, with a P.O. Box address in Kentucky for mailing purposes, but did not provide the physical address of where she resided.  Mother also provided Smith with her mother's mailing address.  Smith said that in late August 2010, at a preliminary hearing on the final custody motion, Mother provided Smith's supervisor, Sara Zinn, with her physical address in Kentucky.

**{¶14}**   Smith claimed that after receiving the Kentucky address, she twice scheduled a home visitation with the local children services agency in Kentucky, but that the home study process could take six to eight months to complete through the interstate compact system.  However, Smith claimed that Mother did not "demonstrate" or "indicate" that the home in Kentucky was her permanent address.  Smith also claimed that in October 2010, Mother told her she did not have a home.

**{¶15}**  Sara Zinn, Smith's supervisor, testified that Mother was homeless in April 2010 and that Mother provided her only with a P.O. Box address before that point.  Zinn

testified that Mother did not request a home study of the Kentucky home and was not in "permanent" residency there. On the second day of the hearing, Zinn said that VCDJFS scheduled two visitations with M.H. in December 2010 and that the first was a "good visit." However, Mother did not appear for the second visit.

**{¶16}** The court conducted an in camera interview with M.H. and summarized her testimony. M.H. related that she loved living with her current foster parents, that Mother did not call her on holidays and had not given her presents, and that when she lived with Mother, they "sometimes" had food. M.H.'s current foster parent testified that M.H. wanted to stay with her and that M.H. became upset after a visitation with her mother and had to go to an emergency counseling session.

**{¶17}** In making its decision, the court accepted a report by M.H.'s guardian ad-litem in lieu of live testimony. The G.A.L reported that M.H. did not want to return to Mother's custody and that M.H. told her there were times living with Mother when there was not enough food to eat and she slept on the floor. M.H. also related staying at her grandmother's home where there were rats, and she slept on the floor and was scared. M.H. said she felt safe at her foster parent's home. The G.A.L. also detailed Mother's issues with visitation in 2010 prior to the final custody hearing. The G.A.L. reported that Mother had supervised visitations with M.H. only five times and cancelled a number of scheduled visitations. Ultimately, the G.A.L. felt that it would be in M.H.'s best interest to grant permanent custody to VCDJFS.

**{¶18}** Mother testified she provided the P.O. Box address in February 2010. However, she also admitted at the hearing that she did not provide VCDJFS with her actual physical in Kentucky until late August 2010 but said that it was her permanent

address.  When asked by the court why she thought a P.O. Box would be sufficient for VCDJFS to conduct a home study, Mother responded that she "didn't really think about that."  Mother testified that she lived in a home in Kentucky with her boyfriend Keith Morris and that the home was in a safe, drug free area.  She admitted that one of her boyfriend's sons was having sex with one of her daughters when they lived in the same house together.  Another of Mother's teenage daughters also became pregnant while under her care when she left the daughter and her boyfriend alone at the house to go grocery shopping.

{¶19}  Mother blamed VCDJFS for the cancelled visitations, claiming that they would cancel visits because of "emergencies."

{¶20}  Mother testified that as of February 2011 (the second day of the final custody hearing) she had been employed for two weeks into a job as a nurse's aide in Portsmouth.  Previously, she held a job at a Wal-Mart in Chillicothe where she worked for four or five months between February and April 2010.  She denied refusing to tell VCDJFS where she was working.

{¶21}  Mother admitted that she did not go to obtain HRS counseling as required in the case plan and claimed she did not know anything about it.  Concerning the parenting class, Mother said she previously completed the same class in 2008 and that VCDJFS had the certificate of completion.  Asked if she thought she needed to take the parenting class again, Mother said that she discussed this with someone at VCDJFS and they told her they would get back to her on it, but they never did.

{¶22}  Mother said that she had the same phone number for a year and complained that VCDJFS employees never returned her calls.  She admitted, however,

that sometimes her phone may have been temporarily disconnected because it was prepaid and she may have needed to purchase new minutes.

**{¶23}** Mother alleged that VCDJFS refused to provide her with a contact number for M.H.'s foster parents and that they repeatedly told her that M.H. had her number and could call her if she wished to. Mother said she sent VCDJFS a letter in October 2010 begging them for assistance in reunifying with M.H. but she received no response.

**{¶24}** M.H.'s grandmother testified for Mother. She said that Mother's current home in Kentucky was safe and stated that VCDJFS was not working with Mother to help try to reunify her with M.H. The grandmother also testified that she asked VCDJFS a couple times about visitation with the child herself, but received no response and did not follow up with VCDJFS on the request.

**{¶25}** When the trial court issued its decision granting VCDJFS permanent custody it made several findings, which we summarize here:

1. M.H. has been in the temporary custody of VCDJFS since March 2008.

2. Mother was living with a Keith Morris, who some of her children were afraid of.

3. Mother left another daughter alone in a home with a boyfriend, and as a result, she became pregnant.

4. Mother did not provide a "safe, stable" home as required in the case plan.

5. Mother's progress in meeting the case plan goals has been "minimal" at best.

6.  Mother did not have ISS or HRS assessments as required in the case plan.

7.  Mother has had employment issues.

8.  M.H. reported sleeping on the floor when living with Mother in the past.

9.  Mother has had an extensive and troubling history of difficulties with visitation.

10.  M.H. had to have an emergency counseling session after one visit with Mother.

11.  M.H.'s foster home is good and she is thriving there and she wants to be adopted by her foster parents.

**{¶26}** Ultimately, the court found by clear and convincing evidence that M.H. had been in the temporary custody of VCDJFS for at least 12 months in a 22-month consecutive period and that granting permanent custody to VCDJFS was in M.H.'s best interests.  Mother then appealed.

II. Assignments of Error

Assignment of Error I

APPELLANT WAS DENIED HER CONSTITUTIONAL RIGHTS TO DUE PROCESS

Assignment of Error II

THE TRIAL COURT ERRED IN FINDING THAT THE VINTON COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES HAD MADE A REASONABLE EFFORT TO REUNIFY THE MINOR CHILDREN WITH

THE APPELLANT OR A REASONABLE EFFORT IN LOOKING FOR A

SUITABLE RELATIVE PLACEMENT

Assignment of Error III

THE TRIAL COURT'S FINDING THAT VCDJFS SATISFIED O.R.C.

2151.414 AND AWARDING PERMANENT CUSTODY TO THE AGENCY

WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE.

Assignment of Error IV

THE VCDJFS BARGAINED IN BAD-FAITH WHEN THEY AGREED TO

DROP THE PERMANENCY ACTION IN RETURN FOR APPELLANT

SURRENDERING ALL OTHER CHILDREN.

**{¶27}** For ease of analysis, we address these assignments of error out of order.

### III. The Permanent Custody Award

#### A. Legal Standard for Grant of Permanent Custody

##### 1. Burden of Proof

**{¶28}** A trial court must base a permanent custody award upon clear and convincing evidence. R.C. 2151.414(B)(1); *In re A. V.,* Lawrence App. No. 08CA31, 2009-Ohio-886, at ¶13. The Supreme Court of Ohio has defined "clear and convincing evidence" as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 104, 495 N.E.2d 23.

### 2. Standard of Review

**{¶29}** In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. "Even under the clear and convincing standard, our review is deferential." *In re Buck,* Scioto App. No. 06CA3123, 2007–Ohio–1491, at ¶ 7. "[A]n appellate court will not reverse a trial court's permanent custody decision if some competent and credible evidence supports the judgment." *In re K.J.,* Athens App. No. 08CA14, 2008–Ohio–5227, at ¶ 10, citing *In re Perry,* Vinton App. Nos. 06CA648 & 06CA649, 2006–Ohio–6128, at ¶ 40, in turn, citing *Schiebel* at 74. The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact. *In re Ohler,* Hocking App. No. 04CA8, 2005–Ohio–1583, at ¶ 15, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (per curiam) (noting that "[t]he underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony").

### 3. Legal Standard -- Best Interest of the Child

**{¶30}** The trial court granted VCDJFS permanent custody on the basis of R.C. 2151.414(B)(1)(d), which provides that a court may not make a grant of permanent custody to a children services agency unless the court finds by clear and convincing evidence that: (1) the child has been in the temporary custody of one or more public

children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; and (2) that the grant of permanent custody is in the best interest of the child. R.C. 2151.414(B)(1).

{¶31} The court must consider all relevant factors in determining whether granting the permanent custody motion serves the child's best interests. R.C. 2151.414(D)(1). These factors include, but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in divisions R.C. 2151.414(E)(7) to (11) apply. Id.

### B.  Weight of the Evidence

{¶32} First, we address Mother's third assignment of error where she contends that the weight of the evidence fails to support the court's permanent custody decision under R.C. 2151.414(B)(1).  As noted, our standard of review requires us to search the record to see if competent and credible evidence supports the court's factual conclusions.  *In re K.J.*, supra.

{¶33} The court found that M.H. was in the temporary custody of VCDJFS, a public children services agency, for more than twelve months in a consecutive twenty-two month period as required by R.C. 2151.414(B)(1)(d).  The record accurately reflects that M.H. was in the continuous temporary custody of VCDFJS since March 2008, i.e., more than two years at the time of the filing of the agency's motion for permanent custody in July 2010.  Mother does not contest this finding, but simply refers to it as "sleight of hand."  However, it is one of the statutory prerequisites.

**{¶34}** The court also found that granting permanent custody to VCDJFS was in M.H.'s best interest because: (1) Mother failed to provide suitable housing for M.H. in the past, which caused M.H. to be placed in VCDJFS' temporary custody nearly three years prior. The record demonstrates that the trial court originally granted VCDJFS temporary custody of M.H. in early 2008 because of Mother's lack of housing. This is a relevant best interest concern under R.C. 2151.414(D)(1)(c), involving the custodial history of the child.

**{¶35}** The court also found M.H. wished to be adopted by her current foster parents. The record supports the trial court's findings concerning M.H.'s wishes, a relevant best interest finding under R.C. 2151.414(D)(1)(b). The judge spoke to M.H. in chambers and summarized her testimony on the record, in which she stated she loved living with her foster parents. M.H.'s foster mother testified that M.H. wanted to stay with her. The G.A.L.'s report also confirmed that M.H. told the G.A.L. that she did not want to return to Mother's custody.

**{¶36}** Likewise, the court concluded Mother failed to comply with the reunification case plan by failing to remedy issues related to housing, employment, visitation, and counseling and Mother had a troubling history concerning visitation. Evidence in the record substantiates Mother's failure to comply with the case plan in obtaining "stable housing." Although Mother was allegedly residing in a home in Kentucky in February 2010, she only provided VCDJFS a P.O. Box address to send her mail. She admitted that she did not provide VCDJFS with the physical address of her Kentucky residence until late August 2010. When asked by the court why she thought VCDJFS would conduct a home study when provided with a P.O. Box address, Mother

replied that she "didn't really think about that."  And although she disputed it, Mother apparently did not indicate to VCDJFS that she was permanently residing at the home in Kentucky.  VCDJFS caseworkers reported that Mother told them that she was homeless at various points in 2010.  Some of the testimony in the record also seems to suggest Mother was living at her mother's address at some point in early 2010 and then again in September or October 2010.

{¶37}  Evidence in the record also substantiates Mother's failure to remedy her employment situation.  Although Mother claimed she worked at Wal-Mart from February to April 2010, VCDJFS employees testified that she refused to provide them with the information needed to verify employment.  Mother refuted this claim, but we must defer to the factfinder on such disputes as they are in the better position to gauge the credibility of witnesses.  *Seasons Coal Co.*, supra.  The record also reveals that Mother was apparently unemployed from April 2010, when she left the employ of Wal-Mart, until late January 2011, when she began to work as a nurse's aide in Portsmouth.

{¶38}  Likewise there is evidence in the record to establish Mother's problems with visitation.  The G.A.L.'s report detailed Mother's problems with visitations in the year leading up to the final custody hearing.  During this time, Mother cancelled at least four visitations, did not appear for one scheduled visitation, and ultimately attended five visitations with M.H. from December 2009 through October 2010.  In between the date of the first day of the final custody hearing (early November 2010) and the second day (early February 2011), Mother had a total of two visits, one of which she did not attend.  Mother claimed that VCDJFS cancelled the visitations, but again, our standard of review requires deference to the factfinder in factual disputes.

{¶39} Finally, evidence in the record supports the finding concerning Mother's failure to comply with certain counseling or parenting classes required by the case plan, which called for her to attend a parenting class and to have assessments completed by "HRS" and "ISS." Mother did not complete the required parenting class, although she completed the same class in 2008. She admitted not attending "HRS" counseling, explaining at the final hearing that she did not know anything about it. Mother, however, did appear to comply with the required "ISS" counseling.

{¶40} Consequently, we conclude evidence in the record supports the findings of the court. Based on the testimony of the witnesses, the G.A.L.'s report and recommendation, and other historical facts in the case, the trial court properly weighed the evidence and reached the conclusion under R.C. 2151.414(B)(1) that granting VCDJFS permanent custody of M.H. was in M.H.'s best interests. We therefore reject Mother's third assignment of error.

C.  Reasonable Efforts to Reunite Mother and Child or Place Her with a Suitable

Relative

{¶41} In her second assignment of error, Mother argues that the court erred in finding that VCDFJS made reasonable efforts to reunify her with M.H. In certain situations R.C. 2151.419(A) requires trial courts to make a finding that the children services agency made a "reasonable effort" "to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home" before terminating parental rights. However, that statute applies only to hearings held under to R.C. 2151.28, 2151.31(E), 2151.314,  2151.33, or 2151.353. See R.C. 2151.419(A)(1).  "These sections involve

adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶41. Thus, by its plain terms the specific requirement to make reasonable efforts set forth in R.C. 2151.419(A) does not apply in a R.C. 2151.413 motion for permanent custody. Id. See also, *In re J.K.*, Athens App. No. 09CA20, 2009-Ohio-5391, at ¶26

**{¶42}** Here VCDJFS filed its motion for permanent custody under R.C. 2151.413 and even though the trial court found that VCDJFS made reasonable efforts to reunify Mother with M.H., it was not statutorily required to do so. Nonetheless, the record reflects some evidence that VCDJFS made efforts at reunifying Mother with M.H. Primarily, VCDJFS scheduled or attempted to schedule visitations with Mother. Mother, however, cancelled or failed to attend a number of visitations. Furthermore, as the trial court found Mother made little effort on her own part to achieve reunification with M.H. She argues that VCDJFS never completed a home study on her residence in Kentucky. However, she also admitted at the final custody hearing that she did not give VCDJFS the physical address of her Kentucky residence until late August 2010, because she "didn't really think about it." As discussed in the previous section, Mother made little effort in obtaining stable employment or at least reporting that employment to VCDJFS for verification. Finally, Mother did not complete all the required counseling or parenting classes required in the case plan. Consequently, we conclude that the trial court did not err in finding that VCDJFS made "reasonable efforts" to reunify her with M.H.

**{¶43}** Similarly, Mother argues and the trial court failed to apply R.C.

2151.412(G)(2), which she claims required the court to make a finding that the children

services agency made "reasonable efforts" to place the child with a suitable relative .

R.C. 2151.412(G)(2) provides:

> (G) In the agency's development of a case plan and the court's review of
>
> the case plan, the child's health and safety shall be the paramount
>
> concern. The agency and the court *shall be guided* by the following
>
> general priorities:
>
> * * *
>
> (2) If both parents of the child have abandoned the child, have
>
> relinquished custody of the child, have become incapable of supporting or
>
> caring for the child even with reasonable assistance, or have a detrimental
>
> effect on the health, safety, and best interest of the child, the child should
>
> be placed in the legal custody of a suitable member of the child's
>
> extended family[.] (Emphasis added.)

**{¶44}** As the leading paragraph of R.C. 2151.412(G) makes clear, the language

of this code section is precatory.  We discussed this issue recently in *In re M.O.*, Ross

App. No. 10CA3189, 2011-Ohio-2011, at ¶15:

> 'Ohio's courts have consistently recognized that the language in R.C.
>
> 2151.412(G) is precatory, not mandatory.' *In re A.E.,* Franklin App. Nos.
>
> 07AP685 & 07AP–748, 2008–Ohio–1375, at ¶ 35, citing *In re Halstead,*
>
> Columbiana App. No. 04 CO 37, 2005–Ohio–403, at ¶ 39, in turn, citing *In*

*re Hiatt* (1993), 86 Ohio App.3d 716, 722, 621 N.E.2d 1222. As the

Seventh District explained:

> [T]his statute does not command the juvenile court to act in a
>
> specific manner. Instead, it sets out general, discretionary priorities to
>
> guide the court. So while the guidelines may be helpful to the juvenile
>
> court, it is not obligated to follow them. Therefore, the juvenile court's
>
> judgment is not in error simply because the court chose not to follow one
>
> of these suggested guidelines. *Halstead* at ¶39."

**{¶45}** In *M.O.*, we went on to hold that a public children services agency has no statutory duty to make "reasonable efforts" to place the child with an extended family member before it can obtain permanent custody of the child. Id. at ¶16.

**{¶46}** In addition to the absence of a statutory duty to make "reasonable efforts" to place M.H. with a suitable relative, there is no evidence in the record of a suitable relative willing to accept custody of M.H. as Mother claims. In her brief, Mother writes "[t]he maternal grandmother * * * is perfectly able to accept placement of M.H. but was never given the opportunity." However, there is no evidence in the record supporting this assertion. The maternal grandmother testified at the final custody hearing but did not indicate that she would accept or was capable of accepting custody of M.H. Instead, her testimony concerned the interactions between Mother and M.H. at a visitation, her opinion that Mother's home in Kentucky was "safe," and her opinion that VCDJFS had not worked with Mother to help reunify her with M.H.

**{¶47}** Consequently, we reject this assignment of error. And to the extent Mother raises a similar argument about the agency's lack of reasonable efforts in her

first Assignment of Error, we reject it on the grounds stated here.  In summary, we reject

Mother's second, third, and a portion of her first assignment of error.

## IV.  Due Process

{¶48}  In her first assignment of error, Mother argues that VCDJFS violated her

constitutional due process rights.  She contends: "Appellant was not afforded due

process in the entire handling, or mishandling, of her case."

{¶49}  "[T]he Constitutions of both the United States and the state of Ohio afford

parents a fundamental right to custody of their children[.]"  *In re James,* 113 Ohio St.3d

420, 2007-Ohio-2335, 866 N.E.2d 467, at ¶16.  A parent's fundamental right to the care,

custody, and management of his or her child is not, however, absolute.  Rather, "it 'is

plain that the natural rights of a parent * * * are always subject to the ultimate welfare of

the child, which is the pole star or controlling principle to be observed.'"  *In re*

*Cunningham* (1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034, quoting *In re R.J .C.*

(Fla.App.1974), 300 So.2d 54, 58.

{¶50}  The Due Process clause safeguards against state infringement of a

parent's fundamental right through procedural and substantive guarantees.  *Troxel v.*

*Granville* (2000), 530 U.S. 57, 65-66, 120 S.Ct. 2054.  The procedural guarantee

ensures a parent the right to fundamentally fair procedures before the state may infringe

on the right, i.e., notice, a hearing, the right to appear at the hearing, and the assistance

of counsel.  *In re S.B.,* 183 Ohio App.3d 300, 916 N.E.2d 1110, 2009-Ohio-3619, at

¶29.  Mother does not contend that the state or VCDJFS deprived her of these

procedural rights, nor could she, as the record reflects that the state provided notice and

the trial court held a final custody hearing at which she was present and zealously

represented by counsel.  Thus, we conclude that no violation of Mother's procedural due process rights occurred.

{¶51}  The substantive component of the Due Process clause "provides heightened protection against government interference" with any fundamental right. *Washington v. Glucksberg* (1997), 521 U.S. 702, 720, 117 S.Ct. 2258.  Statutes that authorize infringement upon a fundamental right must be "narrowly tailored" to achieve a compelling state interest. *Reno v. Flores* (1993), 507 U.S. 292, 301-02, 113 S.Ct. 1439.  In this case, the state and VCDJFS utilized the statutory provisions contained in R.C. Chapter 2151 to obtain permanent custody of M.H.  Mother, however, does not attack the constitutionality of R.C. Chapter 2151 or its provisions.  Instead, in this first assignment of error and repeated throughout assignments of error two and three, she argues that the VCDJFS violated her due process rights by failing to follow the statute and by failing to follow the dictates of the reunification case plan.

{¶52}  The crux of her argument here seems to be that VCDJFS' overall poor management of her reunification plan constituted a denial of the due process right of the parenting.  For example, Mother contends that VCDJFS did not schedule a home study on her residence in Kentucky as set forth in the case plan.  She also complains that VCDJFS created a "rule" that the residence had to be her "own residence."  And she argues because VCDJFS never audited her Kentucky residence or arranged for it to be audited by Kentucky authorities, she could not have home visitations with M.H. She contends this lack of visitation contributed to the court's ultimate decision to grant VCDJFS permanent custody and hampered her efforts to develop a relationship with M.H.

{¶53} Even if we were to assume in arguendo that these contentions were true, they do not mount either a facial or as applied substantive due process challenge to any provision in R.C. Chapter 2151. Instead, they actually amount to an argument that the agency failed to follow the statutory requirements. We have already addressed these arguments in the sections above, e.g., that VCDJFS failed to make reasonable efforts to reunify her with M.H. and that the best interest decision was against the manifest weight of the evidence. Because we have already concluded that Mother's arguments are meritless, we see no basis to find that the agency's reliance on the statute amounts to a due process violation.

{¶54} Mother's argument also overlooks the fact that the case plan required her to obtain stable housing. By her own admission she failed to provide VCDJFS with the address of her residence in Kentucky until late August 2010, two months after VCDJFS filed their motion for permanent custody. And VCDJFS employees testified that Mother informed them at different times throughout 2010 that she was either without permanent housing or homeless. VCDJFS likely could have been more aggressive in ascertaining Mother's actual physical address for purposes of conducting a home study. Left with only a P.O. Box mailing address, it seems reasonable that they might have attempted to determine whether she had permanent residency. Nonetheless, Mother herself did little to speed that process on, only providing the physical address several months after VCDJFS moved for permanent custody. Consequently, we conclude that any shortcomings in VCDJFS' obligation under the case plan to complete a home study do not rise to the level of a due process violation.

{¶55} Mother also contends that the case plan guaranteed her weekly telephonic visitation with M.H. but that VCDJFS refused to provide her with M.H.'s foster parents' phone number and told her that M.H. had her number and would call if she wanted to. The case plan provided that "Mother may have phone contact with children as long as it is in the best interest of the children." It is unclear from the case plan who determines whether phone contact with M.H. would be in her "best interest." Mother testified that she requested M.H.'s foster parents' home phone number from caseworker Smith at some point, but that Smith would not give it to her until she conferred with her supervisor, Sara Zinn, or the Vinton County Prosecutor approved the request. From there it seems that VCDJFS never followed up on the request or else VCDJFS decided against providing Mother with the phone number.

{¶56} Even if VCDJFS failed to abide by the case plan in this instance or in some other respects, we conclude that any shortcomings on VCDJFS' part are outweighed by Mother's own failure to actively participate in the reunification process and to make or report the changes needed to demonstrate that she was capable of providing for the care and custody of M.H. When viewed in the aggregate, we can discern no violation of Mother's due process rights based on VCDJFS' failure to implement aspects of the reunification case plan. Thus, we overrule her 1st assignment of error.

### V. "Bad Faith" Bargaining

{¶57} In her fourth assignment of error, Mother argues that the state and VCDJFS "bargained in bad faith" by agreeing to dismiss their motion for permanent custody of M.H. in return for Mother's agreement to surrender permanent custody of

some of her other children to VCDJFS.  Mother contends that VCDJFS' failure to honor

the agreement resulted in a "gross miscarriage of justice."

{¶58}  The agency argues that there was no agreement on their part other than

agreeing to "open adoptions" for the children that Mother voluntarily surrendered.  The

record supports this contention.  The state explains "it was also understood that

because of time limitations, the VCDJFS would have to dismiss the pending Permanent

Custody Motion for [M.H.], but would re-file the Motion for Permanent Custody at a later

date if conditions remained the same."  VCDJFS claims it re-filed the motion for

permanent custody motion when it became "apparent that [Mother] was still not making

much effort to comply with the new case plan."

{¶59}  We conclude that there is no evidence suggesting that VCDJFS agreed to

dismiss its previous motion for permanent custody of M.H. in return for Mother agreeing

to voluntarily surrender custody of some of her other children.  Mother contends that the

agreement appears on the record in the court's December 9, 2009 judgment entry in

which the court memorialized the voluntary surrender of her other children.  However,

that entry demonstrates that the only agreement between the parties pertained to open

adoptions and that the parties would enter into a new case plan pertaining to M.H.  The

entry states:

> The Court finds that both [Mother] and [Father] each executed such
>
> permanent surrenders of her and his own free will, knowingly, voluntarily
>
> and intelligently and that *no one promised her or him anything,* threatened
>
> her or him, harassed her or him or intimidated her or him in signing the
>
> same.  The Court does note that it was agreed by all the parties in open

court that if an adoption eventually occurred that such adoption (s) would be open ones.

**{¶60}** Moreover, Mother's own testimony at the final custody hearing negates her claim. Mother's trial counsel asked her why she surrendered permanent custody of some of her children.

Mother: Because I want my . . . inaudible . . . I would not be able to give them everything they needed.

Trial counsel: Ok. But why did you not relinquish on [M.H.]?

Mother: Because I wanted at least one of them.

Trial counsel: Ok. So you are trying to reunify with her?

Mother: Right.

**{¶61}** The record contains no evidence that VCDJFS agreed not to pursue permanent custody of M.H. in return for Mother's voluntary surrender of her other children. In fact, it would be improper for the agency to agree never to pursue permanent custody of a child regardless of circumstances yet to occur. Therefore, we overrule Mother's fourth assignment of error.

## VI. Conclusion

**{¶62}** We affirm the decision of the Vinton County juvenile court granting permanent custody of M.H. to VCDJFS. Evidence in the record supports the court's conclusion that granting permanent custody was in M.H.'s best interest. The trial court was not required to find that VCDJFS made reasonable efforts to reunify M.H. with Mother or place M.H. with a suitable relative. VCDJFS did not violate Mother's due process rights in their administration of her reunification case plan as Mother herself put

forth little effort in achieving the goals of the case plan or actively participating in making

the changes needed to re-establish custody.  Finally, there is no evidence in the record

that VCDJFS "bargained in bad faith" by agreeing to dismiss the motion for permanent

custody of M.H. if Mother voluntarily agreed to surrender custody of some of her other

children.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Vinton County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J. & Kline, J.:  Concur in Judgment and Opinion.


For the Court


BY:  _____
     William H. Harsha, Presiding Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**