[Cite as *In re A.J.*, 2014-Ohio-3755.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| IN RE: A.J., B.J., & M.R. | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| (Mother's Appeal) | : | |
| | : | Case No. 14-CA-35 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case Nos. F2011-0601; F2011-0603; F2012-0447

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      August 26, 2014

APPEARANCES:

For Father-Appellant:

MICHAEL R. DALSANTO
3 South Park Place, Suite 220
Newark, OH 43055

For Mother-Appellant

DREAMA BOGART
P.O. Box 30402
Gahanna, OH 43230

For Licking County DJFS-Appellee:

LIA MEEHAN
20 S. Second Street, Fourth Floor
Newark, OH 43055

Guardian ad Litem:

SHEENA SJOSTRAND-POST
195 E. Broad St.
Pataskala, OH 43062

*Delaney, J.*

{¶1}   Mother-Appellant Crystal Rosumenko appeals the April 4, 2014 judgment entry of the Licking County Court of Common Pleas, Juvenile Division terminating her parental rights as to B.J., A.J., and M.R.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   Appellant Robert Johns is the Father of B.J. (born June 12, 2001) and A.J. (born November 23, 2004). Appellant Crystal Rosumenko is the Mother of B.J., A.J., and M.R. (born May 18, 2012). Paul Rosumenko is the father of M.R.[1]

{¶3}   Licking County Department of Job and Family Services ("LCDJFS") became involved with the family in June 2011. A voluntary case was opened due to allegations of Mother's substance abuse and poor home conditions. Mother was enrolled in the Licking County Alcoholism Prevention Program (LAPP). Mother resided with Paul Rosumenko and married him on September 5, 2011. Paul Rosumenko is a registered sex offender with past charges of domestic violence, menacing, and a violation of the civil stalking protection order. In October 2011, Paul Rosumenko was sent to prison for a probation violation. Mother's case with LAPP was closed because of Mother's poor attendance.

{¶4}   In October 2011, LCDJFS filed a dependency complaint for A.J. and B.J. The children were placed under protective supervision and placed in Father's home. In December 2011, A.J. and B.J. were adjudicated dependent.

{¶5}   While A.J. and B.J. resided with Father, LCDJFS provided Father with multiple resources to assist with the care of the children. B.J. had anger, anxiety, and attachment issues. A.J. was diagnosed with post-traumatic stress syndrome and

---

[1] Paul Rosumenko has not filed an appeal of the April 4, 2014 judgment entry.

attention deficit disorder. Both children took medication. Father at one point due to a lack of medication for one child, gave the one child the other's medication. The children suffered from lice and Father's home had bed bugs. Father moved from the home to a one-bedroom apartment. Father had serious health issues related to a hip replacement requiring Father to stay in a nursing home during his recovery in August 2012. The LCDJFS resources assisted Father with understanding the need to keep a clean and safe home and provide the children with structure. The resource providers stated there was no doubt Father loved his children, but he struggled with caring for the children and their special needs. One resource provider stated that Father would hear but not listen to the recommendations.

{¶6} On March 12, 2012, LCDJFS filed a motion to modify in B.J.'s case, asking that his disposition be modified from protective supervision to temporary custody, due to B.J.'s behavioral issues. While residing with Father, B.J. was truant from school at least 45 days. B.J. stabbed a teacher with a pencil. On May 24, 2012, the court granted the motion and B.J. was placed in a treatment foster home.

{¶7} A.J. was returned to Mother's custody, subject to protective supervision. While A.J. resided with Mother, Mother was residing with Nick Hutchinson and his daughter. Nick Hutchinson was a violent alcoholic. There were unsubstantiated allegations that Nick Hutchinson and his daughter sexually abused A.J. LCDJFS received complaints of problems in Mother's home such as parties and questionable people in the home.

{¶8} M.R. was born on May 18, 2012.

{¶9} On July 17, 2012, LCDJFS sought and obtained an ex parte emergency order granting shelter care of A.J. and M.R. Mother tested positive for oxycodone. Mother has been diagnosed with an opioid related disorder. Shelter care was granted on July 18, 2012. On November 9, 2012, M.R. was adjudicated dependent and placed in the temporary custody of LCDJFS. A.J. was also placed in the temporary custody of LCDJFS. A.J. was placed in the treatment foster home with B.J.

{¶10} On May 17, 2013, Paul Rosumenko was sentenced to six years in prison for aggravated burglary and domestic violence, where Mother was the victim of the domestic violence charge.

{¶11} On May 31, 2013, LCDJFS filed a motion for permanent custody. A hearing before the magistrate was held on October 11 and 14, 2013.

{¶12} Ryan Houck, the family's caseworker, testified LCDJFS has worked with the family for two years and five months and has not seen improvement in Mother or Father to allow for reunification with the children. The guardian ad litem recommended that permanent custody be granted to LCDJFS.

{¶13} On November 26, 2013, the magistrate issued his decision recommending that permanent custody of A.J., B.J., and M.R. be granted to LCDJFS.

{¶14} Mother filed objections to the magistrate's decision. The trial court set a non-oral hearing on January 17, 2014.

{¶15} On April 4, 2014, the trial court adopted the decision of the magistrate and granted permanent custody of A.J., B.J., and M.R. to LCDJFS.

{¶16} It is from this decision Mother now appeals.

**ASSIGNMENTS OF ERROR**

{¶17} Mother raises one Assignment of Error:

{¶18} "THE TRIAL COURT ERRED IN GRANTING LICKING COUNTY JOB AND FAMILY SERVICES, CHILDREN'S SERVICES MOTION FOR PERMANENT CUSTODY BECAUSE LICKING COUNTY JOB AND FAMILY SERVICES, CHILDREN SERVICES FAILED TO EXERCISE DUE DILIGENCE IN ITS INVESTIGATION OF POSSIBLE RELATIVE PLACEMENT REQUIRED BY R.C. 2151.412.(G) ET SEQ. AND OHIO ADM. CODE 5101:2-39-01 ET SEQ."

**ANALYSIS**

{¶19} Mother argues in her sole Assignment of Error that LCDJFS did not, pursuant to R.C. 2151.412, consider whether extended family members would be suitable custodians for the children. Because LCDJFS failed in their duty, Mother argues the trial court erred when it held that LCDJFS made reasonable efforts to avoid removal of the children. We disagree.

{¶20} R.C. 2151.412(H)(2) states:

(H) In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:

* * *

(2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental

effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family;

* * *

{¶21} Mother concedes that LCDJFS was under no statutory duty to make reasonable efforts to place the children with a relative. The Fourth District Court of Appeals stated:

As the leading paragraph of R.C. 2151.412(G) makes clear, the language of this code section is precatory. We discussed this issue recently in *In re M.O.,* Ross App. No. 10CA3189, 2011–Ohio–2011, at ¶ 15:

'Ohio's courts have consistently recognized that the language in R.C. 2151.412(G) is precatory, not mandatory.' *In re A.E.,* Franklin App. Nos. 07AP685 & 07AP–748, 2008–Ohio–1375, at ¶ 35, citing *In re Halstead,* Columbiana App. No. 04 CO 37, 2005–Ohio–403, at ¶ 39, in turn, citing *In re Hiatt* (1993), 86 Ohio App.3d 716, 722, 621 N.E.2d 1222. As the Seventh District explained:

[T]his statute does not command the juvenile court to act in a specific manner. Instead, it sets out general, discretionary priorities to guide the court. So while the guidelines may be helpful to the juvenile court, it is not obligated to follow them. Therefore, the juvenile court's judgment is not in error simply because the court

chose not to follow one of these suggested guidelines. *Halstead* at

¶ 39."

In *M.O.,* we went on to hold that a public children services agency

has no statutory duty to make "reasonable efforts" to place the child with

an extended family member before it can obtain permanent custody of the

child. *Id.* at ¶ 16.

*In re M.H.*, 4th Dist. Vinton No. 11CA683, 2011-Ohio-5140, ¶ 44-45.

{¶22} Mother argues that LCDJFS was required to exercise due diligence to investigate whether there was a potential relative placement under Ohio Adm.Code 5101:2-39-01(P)(1) before moving for permanent custody. She states the record in this case shows that LCDJFS did not investigate relative placement for the children; therefore, LCDJFS did not make reasonable efforts prior to the removal of the children from Mother's custody.

{¶23} At the permanent custody hearing, Ryan Houck, caseworker for the family, testified she was provided relative or kinship placements by Father and Mother but the three that LCDJFS were able to explore were ruled out based on the Ohio Revised Code. (T. 192).

{¶24} The record in this case shows that LCDJFS made reasonable efforts to place the children with a suitable relative but its investigation revealed there was no relative suitable for placement. Accordingly, the trial court did not err in granting permanent custody of the children to LCDJFS based on Mother's argument in the present appeal.

**CONCLUSION**

{¶25} Mother's sole Assignment of Error is overruled.

{¶26} The judgment of the Licking County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Farmer, P.J. and

Wise, J., concur.